UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    - v -

JORDAN BELFORT AND
DANIEL PORUSH

        Defendants.

Cr. No. 98-859 (JG)
 (Gleeson, J.)

## NOTICE OF APPLICATION FOR FEES AND DISBURSEMENTS

**PLEASE TAKE NOTICE** that upon the annexed application of Weil, Gotshal &
Manges LLP, attorneys for Harvey R. Miller, Esq., as Trustee, the undersigned will move
before the Honorable John Gleeson, United States District Judge, on February 4, 2005 at
10:00 a.m. at the United States District Court for the Eastern District of New York, 225
Cadman Plaza East, Brooklyn, New York 11201, for an order allowing compensation for
professional services rendered and reimbursement of expenses incurred in connection
with the administration of a fund comprised of property forfeited by certain individuals in
connection with plea agreements with the United States of America.

Dated: New York, New York
      January 24, 2005

/s/ Theodore E. Tsekerides
Theodore E. Tsekerides (TT 5946)
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, N.Y. 10153
(212) 310-8000

Attorneys for Harvey R. Miller, Esq.
as Trustee

To:    Richard Weber, Esq.
       Assistant United States Attorney
       U.S. Attorney's Office
       Eastern District of New York
       One Pierrepont Plaza
       Brooklyn, N.Y. 11201

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- v -

JORDAN BELFORT AND
DANIEL PORUSH

           Defendants.

Cr. No. 98-859 (JG)
(Gleeson, J.)

## <u>APPLICATION FOR FEES AND DISBURSEMENTS</u>

Weil, Gotshal & Manges LLP ("WGM"), attorneys for Harvey R. Miller, Esq., as

Trustee, respectfully submits this application for allowance of compensation for

professional services rendered and reimbursement of expenses incurred in connection

with its administration of a fund comprised of property forfeited by certain individuals in

connection with plea agreements with the United States of America (such fund

hereinafter referred to as the "Restitution Fund") and represents as follows:

## <u>RELEVANT BACKGROUND</u>

<u>Liquidation Proceedings</u>

Stratton Oakmont, Inc. ("Stratton Oakmont") was a securities broker/dealer, and a

member of the National Association of Securities Dealers ("NASD") and the Securities

Investor Protection Corporation ("SIPC").  On December 5, 1996, Stratton Oakmont was

expelled from the NASD as a result of a decision issued by the National Business

Conduct Committee of the NASD which found, among other things, that Stratton

Oakmont's history of disciplinary incidents established an identifiably consistent pattern

of willful disregard for regulatory requirements and regulatory authority.

On January 24, 1997, Stratton Oakmont commenced a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  On January 29, 1997, upon an application of SIPC, the filing of which stayed the Chapter 11 Case, the Honorable John E. Sprizzo, Judge of the United States District Court for the Southern District of New York entered an order which, <u>inter alia</u>, placed Stratton Oakmont in liquidation under SIPA and appointed the trustee for the purpose of liquidating the business of Stratton Oakmont pursuant to section 78eee(b)(3) of SIPA (the "SIPA Proceeding").

In late February of 1997, pursuant to an order of the Bankruptcy Court dated February 6, 1997, the Trustee caused claim forms to be mailed to approximately 22,000 Stratton Oakmont investors and creditors.  In response, the Trustee received approximately 3,368 claims for protection afforded to "customers" under SIPA and 276 general creditor claims.

On May 13, 1998, the Trustee commenced an adversary proceeding in the SIPA Proceeding (the "Adversary Proceeding") against Daniel Porush ("Porush"), Jordan Belfort ("Belfort"), both former officers and directors of Stratton Oakmont, and others, seeking to recover approximately $54 million for the Stratton Oakmont estate based upon various breaches of fiduciary duty and fraudulent transfers and conveyances.

<u>Criminal Proceedings</u>

Subsequent to the commencement of the Adversary Proceeding, on or about September 8, 1998, under an indictment (the "Indictment") filed in the United States District Court of the Eastern District of New York entitled <u>United States of America v.</u>

Jordan Belfort and Daniel Porush and bearing Cr. No. 98-859 (E.D.N.Y.) (JG), the grand jury charged Porush, Belfort and certain co-conspirators with, inter alia, securities fraud and money laundering conspiracy in connection with the activities of Porush and Belfort at Stratton Oakmont over a period of time commencing in 1991.

Pursuant to plea agreements with the United States, Porush and Belfort were required to forfeit certain properties (the "Forfeited Property"), which they represented were illegal proceeds traceable to securities fraud in connection with their activities at Stratton Oakmont.  The Forfeited Property totaled in excess of $11.5 million.

The Restitution Fund

Following the Indictment, WGM, representatives of SIPC, and of the Office of the United States Attorney for the Eastern District of New York (the "United States Attorney") met and discussed, among other things, the claimants in the SIPA Proceeding, the claims filed in the SIPA Proceeding and the losses suffered by individuals and entities who qualify under the applicable statutory and regulatory authorities of Titles 18 and 21, United States Code, and Title 28, C.F.R., as victims of the criminal activities which are charged in the Indictment (the "Victims"), and the distribution of the net proceeds realized from the sale of the Forfeited Property for the benefit of the Victims.

Following these discussions, the United States Attorney determined that, based upon the claims filed in the SIPA Proceeding and the Trustee's familiarity with, and access to, the books and records of Stratton Oakmont, the Trustee and his staff were uniquely qualified to adjust, evaluate, investigate, review and determine losses of Victims incurred in the trading of securities as clients of Stratton Oakmont.  As a result, in order to facilitate the most economical, expeditious and efficient method of distributing the

Restitution Fund, the United States Attorney requested, and the Trustee agreed, that the Trustee would be appointed by the Court to administer the Restitution Fund to compensate the Victims.

That agreement was memorialized in a Second Amended Stipulation and Order Appointing The Trustee For the Liquidation of Stratton Oakmont, Inc. To Distribute The Forfeiture Proceeds, dated April 5, 2002 (the "Stipulation and Order"). Following a hearing on notice to relevant parties, on April 11, 2002 this Court approved the Stipulation and Order adopting procedures for the distribution and administration of the Restitution Fund by the Trustee, his counsel and staff. A copy of the Stipulation and Order is attached as Exhibit A hereto.

Administration of Restitution Fund

Upon commencement of WGM's services, the amount of the Restitution Fund, together with interest, available for distribution totaled $12,077,147.68. WGM attorneys worked with the Trustee' staff to establish protocols for the distribution of the fund and to determine the eligibility and appropriate pro-rata amounts for each eligible claimant. As the Trustee advised the Court at the outset of these proceedings, the bulk of the work was performed by non-legal staff so as to minimize cost to the fund. WGM attorneys reviewed and analyzed issues that arose regarding eligibility of claimants and addressed questions raised by claimants and/or their counsel regarding the fund's administration and distribution. WGM attorneys also reviewed and oversaw the distribution schedules and spreadsheets to ensure compliance with the Stipulation and Order.

In addition, WGM attorneys addressed and participated in resolving a dispute raised by Nancy Porush regarding her alleged entitlement to proceeds from the fund.

That matter was resolved, with Court approval, for the total amount of $150,000.00 in distribution from the fund.  WGM attorneys also addressed and resolved issues relating to a restraining notice served upon the Trustee seeking to enjoin distribution of proceeds from the fund.

In total, on behalf of the Trustee, WGM distributed nearly $11,200,000 to a total of 1,513 Victims.  Approximately $460,000 remains in the fund and will be returned to the United States Attorney for possible future distributions.   These funds reflect amounts that could not be distributed because the claimants could not be located.

WGM submits that it conducted the administration of the Restitution Fund in a professional and efficient manner in order to maximize recoveries to the Victims.  The compensation for which WGM seeks recovery represents actual work performed by its attorneys and staff.  Consequently, WGM is entitled to the compensation and reimbursement requested in this application.  The United States Attorney has reviewed this application (and corresponding time records) and approves the requested compensation and reimbursement.

## THE COMPENSATION AND REIMBURSEMENT REQUESTED

WGM herein seeks approval of its fees and expenses in the total amount of $17,310.11.  This is comprised of $16,253.50 incurred in connection with services performed by WGM attorneys in normal and usual charges in administering the Restitution Fund.  In addition, WGM seeks $1,056.61 for reimbursement of expenses incurred in connection with the administration of the fund.  No previous allowance of compensation for professional services performed or reimbursement of expenses incurred

has been made or requested by WGM.  No payments have been received by WGM on account of the compensation and expense reimbursement requested herein.

In addition to its own fees and expenses described above, WGM also seeks approval of additional payments with respect to staff members who performed the bulk of the work in administering the Restitution Fund.  Pursuant to the Stipulation and Order, $216,136.00 was originally allocated for such work based upon preliminary estimates.  That amount was insufficient for completion of all necessary work. Accordingly, an additional $34,950.97 has been incurred in connection with actual services rendered to the Restitution Fund administration.  These amounts were reasonably incurred in order to administer the distribution of the fund.  The United States Attorney has approved payment of such amounts.  Through this Application, WGM seeks court approval of the payment.

WHEREFORE WGM respectfully requests: (i) allowance of compensation and payment for professional services rendered in the amount of $16,253.50; (ii) reimbursement of expenses incurred in connection therewith in the amount of $1,056.61; (iii) approval of payment to staff in the amount of $34,950.97; and (iv) such other and further relief as is just.

Dated: New York, New York
         January 24, 2005

            /s/ Theodore E. Tsekerides
         Theodore E. Tsekerides (TT 5946)
         Weil, Gotshal & Manges LLP
         767 Fifth Avenue
         New York, N.Y. 10153
         (212) 310-8000

         Attorneys for Harvey R. Miller, Esq.
         as Trustee



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D. N.Y.

★ APR 1 2 2002 ★

TIME A.M. _____
P.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    - v -

JORDAN BELFORT AND
DANIEL PORUSH

      Defendants.

Cr. No. 98-859 (JG)
(Gleeson, J.)

## SECOND AMENDED STIPULATION AND ORDER APPOINTING THE TRUSTEE FOR THE LIQUIDATION OF STRATTON OAKMONT, INC. TO DISTRIBUTE THE FORFEITURE PROCEEDS

This Stipulation (the "Stipulation") is made by and between Harvey R. Miller, Esq., as Trustee (the "Trustee") for the Liquidation of Stratton Oakmont, Inc. ("Stratton Oakmont"), under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa, et seq., by its undersigned attorney, and the United States of America, by its attorney, Alan Vinegrad, United States Attorney for the Eastern District of New York, Richard Weber, Assistant United States Attorney, of counsel.

WHEREAS, Stratton Oakmont was a securities broker/dealer, and a member of the National Association of Securities Dealers ("NASD") and the Securities Investor Protection Corporation ("SIPC"); and

WHEREAS, on December 5, 1996, Stratton Oakmont was expelled from the NASD as a result of a decision issued by the National Business Conduct Committee of the NASD which found, among other things, that Stratton Oakmont's history of disciplinary incidents established an identifiably consistent pattern of willful disregard for regulatory requirements and regulatory authority; and

91

WHEREAS, on January 24, 1997, Stratton Oakmont commenced a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

WHEREAS, on January 29, 1997, upon an application of SIPC, the filing of which stayed the Chapter 11 Case, the Honorable John E. Sprizzo, Judge of the United States District Court for the Southern District of New York entered an order which, inter alia, placed Stratton Oakmont in liquidation under SIPA and appointed the Trustee for the purpose of liquidating the business of Stratton Oakmont pursuant to section 78eee(b)(3) of SIPA (the "SIPA Proceeding"); and

WHEREAS, in late February of 1997, pursuant to an order of the Bankruptcy Court dated February 6, 1997, the Trustee caused claim forms to be mailed to approximately 22,000 Stratton Oakmont investors and creditors; and

WHEREAS, pursuant to SIPA, the last day for the initial filing of claims by Stratton Oakmont investors to obtain the maximum protection afforded to "customers" under SIPA was set as April 29, 1997 and the last day for the filing of all "customer" and general creditor claims, including those of Stratton Oakmont's employees, was set as August 28, 1997; and

WHEREAS, in the SIPA Proceeding, the Trustee received approximately 3,368 claims for protection afforded to "customers" under SIPA and 276 general creditor claims; and

WHEREAS, in connection with marshalling the assets of Stratton Oakmont's estate, the Trustee has been investigating various claims against third parties; and

WHEREAS, based upon these investigations, the Trustee, his attorneys and financial advisors have developed the legal and factual bases for ascertaining claims belonging to Stratton Oakmont's estate against former officers, directors, and employees of Stratton Oakmont, as well as against other entities and individuals; and

WHEREAS, on May 13, 1998, the Trustee commenced an adversary proceeding (the "Adversary Proceeding") against Daniel Porush ("Porush"), Jordan Belfort ("Belfort"), both former officers and directors of Stratton Oakmont, and others seeking approximately $54 million based upon various breaches of fiduciary duty and fraudulent transfers and conveyances; and

WHEREAS, subsequent to the commencement of the Adversary Proceeding, on or about September 8, 1998, under an indictment (the "Indictment") filed in the United States District Court of the Eastern District of New York entitled <u>United States of America v. Jordan Belfort and Daniel Porush</u> and bearing Cr. No. 98-859 (E.D.N.Y.) (JG), the grand jury charged Porush, Belfort and certain co-conspirators with, <u>inter alia</u>, securities fraud and money laundering conspiracy in connection with the activities of Porush and Belfort at Stratton Oakmont over a period of time commencing in 1991; and

WHEREAS, pursuant to plea agreements with the United States, Porush and Belfort were required to forfeit certain properties (the "Forfeited Property"), which they represented were illegal proceeds traceable to securities fraud in connection with their ·activities at Stratton Oakmont; and

WHEREAS, the United States Marshals Service has estimated the value of the Forfeited Property to be approximately $11,000,000.00; and

WHEREAS, pursuant to 18 U.S.C. § 982(a)(1) and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States is now entitled to possession of the Forfeited Property; and

WHEREAS, 21 U.S.C. § 853, which incorporates by reference 18 U.S.C. § 982, provides for the distribution of the Forfeited Property following the publication of notice by the United States of America; and

WHEREAS, pursuant to 21 U.S.C. § 853, 18 U.S.C. § 982, 28 C.F.R. Part 9 and other applicable rules and laws, the United States Attorney General has the discretion and authority to distribute the proceeds of the Forfeited Property to persons who qualify as victims of specified criminal activities; and

WHEREAS, subsequent to the filing of the Indictment, the Trustee's attorneys and representatives of SIPC and of the Office of the United States Attorney for the Eastern District of New York (the "United States Attorney") met and discussed, among other things, the claimants in the SIPA Proceeding, the claims filed in the SIPA Proceeding and the losses suffered by individuals and entities who qualify under the applicable statutory and regulatory authorities of Titles 18 and 21, United States Code, and Title 28, C.F.R., as victims of the criminal activities which are charged in the Indictment (the "Victims"), and the distribution of the net proceeds realized from the sale of the Forfeited Property (such net proceeds, the "Restitution Fund") for the benefit of the Victims; and

WHEREAS, the Forfeited Property represents, in whole or in part, assets which the Trustee otherwise sought to recover in the Adversary Proceeding; and

WHEREAS, the United States Attorney has determined that, based upon the claims filed in the SIPA Proceeding and the Trustee's familiarity with, and access to, the books and records of Stratton Oakmont, the Trustee and his staff are uniquely qualified to adjust, evaluate, investigate, review and determine losses of Victims incurred in the trading of securities as clients of Stratton Oakmont; and

WHEREAS, to facilitate the most economical, expeditious and efficient method of distributing the Restitution Fund, the United States Attorney has requested, and the Trustee has agreed, that the Trustee shall be appointed by the Court to administer the Restitution Fund to compensate Victims in the manner set out below;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and subject to the approval of this Court, the parties hereby stipulate, consent and agree to the following terms and conditions:

1.      Creation of the Restitution Fund. The United States, through the United States Attorney or other agents, shall be responsible for the disposition and liquidation of all of the Forfeited Property and the creation of the Restitution Fund. The Trustee shall not be responsible for disposing or selling any such Forfeited Property. The United States Marshals Service will make an irrevocable transfer of the Restitution Fund (including all interest paid or accrued) to the Trustee, which the Trustee shall hold as a separate fund from other property held by the Trustee in the SIPA Proceeding. The United States Marshals Service is Ordered to transfer to the Trustee all monies currently being held in the Marshals account, plus interest, relating to case Nos. 98-CR. 859 and 00-CV-4538.

2.     Notice.  The United States has published Notice at least thirty (30) days prior to the hearing (the "Hearing") to approve the Stipulation of the proposed distribution in the NY Times to any and all parties asserting any interest in the Forfeited Property.  In addition, the United States has provided written notice by mail of this proposed Stipulation to all parties who have contacted the United States Attorney to assert any interest in the Forfeited Property.

3.     Eligible Claimants.  The following individuals and/or entities shall be entitled to participate in the Restitution Fund, as provided for herein:  (A) those individuals and/or entities that have previously filed claims with the Trustee in the SIPA Proceeding seeking an identified amount of alleged capital losses (excluding general creditors who have filed claims that are not based upon any securities transactions with Stratton Oakmont) (the "SIPA Proceeding Claimants"); and (B) any individuals and/or entities (other than SIPA Proceeding Claimants) that have asserted claims, either: i) prior to the published Notice or ii) within 30 days after the last publication of Notice, with the United States Attorney as Victims against the Forfeited Property to the extent that the United States Attorney determines that such individuals and/or entities should be treated as Victims.  The individuals and/or entities satisfying the criteria of (A) and/or (B) above shall hereinafter be referred to as "Eligible Claimants".  The United States Attorney shall have the right, upon the recommendation of the Trustee or otherwise, to determine that any individual and/or entity that has asserted a claim as provided for herein is not a Victim and, thus, exclude such individual and/or entity from the pool of Eligible Claimants entitled to share in the Restitution Fund.

4.      Administration of the Restitution Fund.

(A)     The Trustee shall administer the Restitution Fund as a separate fund from the estate in the SIPA Proceeding in accordance with the terms of this Stipulation.  Based upon the books and records of Stratton Oakmont in the Trustee's possession, the Trustee shall determine the claims for Total Loss (as defined below) of Eligible Claimants for distribution purposes hereunder.  In so doing, the Trustee may also consider additional information as may be supplied by Eligible Claimants to assist in the determination of the Total Loss.

(B)     Eligible Claimants shall be entitled to receive a pro rata distribution from the Restitution Fund based upon their allowed claims for Total Loss as determined by the Trustee, subject only to the review and approval of the United States Attorney; *provided however* that, any Eligible Claimant who accepts distribution from the Restitution Fund agrees to waive any and all right to pursue further or additional recovery against defendant Belfort in connection with any other existing, concluded or contemplated proceedings, actions and/or arbitrations, including but not limited to, the right to enforce any judgment against Belfort, except that such Eligible Claimant is not precluded from recovering against Belfort in connection with any restitution and/or forfeiture proceedings or funds; and *provided further* that, any distribution to be made to the Eligible Claimants shall be subject to a set-off for any funds, or other remuneration, previously received by such Eligible Claimants from any source relating to the subject matter of the Total Loss claims.  The Trustee shall pay Eligible Claimants their pro rata portion of the Restitution Fund following the determination of all Total Loss claims.

(C)     The Trustee shall have the exclusive right to determine the amount and allowance of Total Loss claims of the Eligible Claimants and whether such claims are entitled to distributions from the Restitution Fund, subject only to the United States Attorney's approval of the Trustee's determinations.

(D)     As provided for herein, "Total Loss" claims means only claims for capital losses in an Eligible Claimant's account(s) with Stratton Oakmont, which shall be determined in a manner mutually agreed upon by the Trustee and the United States *and consistent with the Trustee's representations to the Court at the hearing on April 9, 2000.* Attorney. "Total Loss" claims shall not include, *inter alia*, claims for "losses" based upon hypothetical, speculative profits from contemplated sales of Stratton Oakmont house stocks or other securities. In addition, the following categories of claims shall not be entitled to payment from the Restitution Fund: (i) claims by "insiders" of Stratton Oakmont as defined under 11 U.S.C. § 101(31); (ii) claims by malefactors and/or recipients of avoidable transfers whose claims may be equitably subordinated or disallowed under 11 U.S.C. § 502(d) in the Chapter 11 Case; (iii) claims for punitive damages, exemplary damages, attorneys' fees or interest; and (iv) claims that are contractually subordinated to the claims of other creditors.

(E)     Any determinations made with respect to the allowance of Total Loss claims of Eligible Claimants shall apply only with respect to the administration of the Restitution Fund and shall not be admissible with respect to the determination of the "allowance" of any claims in the SIPA Proceeding.

(F)     The Trustee shall not make any distributions to SIPC from the Restitution Fund in respect of sums SIPC has advanced to pay administrative expenses in this proceeding. However, the Trustee shall be permitted to make distributions from the

Restitution Fund to SIPC in respect of any allowed claim of an Eligible Claimant to the

extent and in the same proportion as such claim has been satisfied in whole or in part

with monies advanced by SIPC and to which SIPC is a subrogee.

(G)     The Trustee shall be reimbursed or paid from the Restitution Fund for all

costs and expenses of administering the Restitution Fund and the claims process relating

to the determination of Eligible Claimants and Total Loss claims (including, but not

limited to, attorneys' fees and the costs of consultants and employees engaged in the

processing of the claims of Eligible Claimants). Set forth in the attached Exhibit A is the

current rate with respect to the attorneys and consultants who, it is contemplated, will

perform services on behalf of the Trustee in connection with administering the

Restitution Fund. It is anticipated that the consultants (and other employees) shall

perform the majority of the necessary work.

(H)     With respect to payments to the Trustee in connection with work to be

performed by consultants and other employees (exclusive of attorneys) in administering

the Restitution Fund and the claims process relating to the determination of Eligible

Claimants and Total Loss claims, such payments shall be made as follows: i) upon

approval of this Stipulation by the Court, advance payment from the Restitution Fund

shall be made to the Trustee in the amount of $216,136.00, the projected cost associated

with reviewing and processing claims for distribution to Eligible Claimants as reflected in

Exhibit B attached hereto; and ii) in the event additional payments are needed to

complete the distribution to Eligible Claimants, payment to the Trustee shall be made

from the Restitution Fund upon approval by the District Court, with notice to the United

States Attorney. Any such additional payments requested by the Trustee shall be

approved by the Court if the amounts sought are reasonable and represent actual services rendered.

(I)     With respect to payments to the Trustee in connection with work performed by attorneys in administering the Restitution Fund and the claims process relating to the determination of Eligible Claimants and Total Loss claims, the Trustee shall submit requests for payment to the District Court for approval, upon notice to the United States Attorney. Any such payments requested shall be approved by the Court if the amounts sought are reasonable and represent actual services rendered.

(J)     The Trustee agrees that he will not request fees pursuant to Bankruptcy Code § 326(a) relating to the Restitution Fund. However, the Trustee shall be allowed reasonable compensation from the Restitution Fund as compensation for the Trustee's services, based upon his actual time and hourly rate, subject to Court approval.

(K)     Interest that accrues in the Restitution Fund shall be added to the Restitution Fund.

5.     <u>Final Report</u>. Within 30 days of making all distributions from the Restitution Fund, the Trustee will provide the United States Attorney with a schedule of the names of all Eligible Claimants who have received distributions and the amounts each of them has received.

6.     <u>Retention of Jurisdiction</u>. The United States District Court for the Eastern District of New York shall retain exclusive jurisdiction to hear and determine disputes regarding the terms of this Stipulation and to enter such orders and judgments as are necessary or appropriate to carry out the provisions of this Stipulation, including but not limited to orders interpreting, clarifying or enforcing the provisions hereof.

7.    <u>Amendments, Modifications and Waivers</u>.  No provision of this

Stipulation may be amended, modified or waived unless such amendment, modification

or waiver is in writing signed by the parties hereto and approved by this Court.

8.    <u>Successors and Assigns</u>.  This agreement shall be binding upon and inure

to the benefit of the parties and their respective successors and assigns.

9.    <u>Counterparts</u>.  This Stipulation may be executed by one or more of the

parties hereto on any number of separate counterparts and all said counterparts taken

together shall be deemed to constitute one and the same instrument.

10.    <u>Governing Law</u>.  The rights and obligations arising under this Stipulation

shall exclusively be governed by, and construed and enforced in accordance with, the

laws of the State of New York.

11.    <u>Court Approval</u>.  This Stipulation is subject to approval by the United

States District Court for the Eastern District of New York.  If the Court fails to authorize

and approve the Stipulation in its entirety, the Stipulation shall be null and void and will

have no further force and effect.

12.    Authority to Execute Stipulation.  Each of the undersigned attorneys

represents and warrants that he or she has all necessary authority to execute the

Stipulation on behalf of the party indicated.

Dated as of this 5th day of April, 2002

ALAN VINEGRAD
United States Attorney
Eastern District of New York

By:  _____
     Richard Weber (RW 9535)
     Assistant U.S. Attorney
     One Pierrepont Plaza, 14th Floor
     Brooklyn, New York 11201
     (718) 254-6033

WEIL, GOTSHAL & MANGES, LLP
Attorneys for Harvey Miller, Esq. as Trustee in
the Liquidation of Stratton Oakmont, Inc., and
not Individually

By:  _____
     Steven Alan Reiss (SR 5889)
     767 Fifth Avenue
     New York, New York 10153-0119
     (212) 310-8000

SO ORDERED

_____  4-11-02
The Honorable John Gleeson
United States District Court

**EXHIBIT A**

## EXHIBIT A

| **ATTORNEYS** | **RATE** |
|---|---|
| **New York** | |

| | |
|---|---|
| Steven A. Reiss | 630.00 |
| Theodore E. Tsekerides | 430.00 |
| Gary Ticoll | 330.00 |

## CONSULTANTS

**Stratton Oakmont**

| | |
|---|---|
| Henry C. Green, Jr. | 80.00 |
| Michael J. Monahan | 42.00 |

## STAFF

| | |
|---|---|
| Frank Gines | 30.00 |
| Charlie Wahren | 20.00 |

(Not including payroll or overtime costs)

## OTHERS

| | |
|---|---|
| Approximate Costs For Three Temporary Clerks To Key Activity And Assist In Scheduling | 35.00 |

**EXHIBIT B**

## DISTRIBUTION FOR THE JUSTICE DEPARTMENT

### HOURLY RATES FOR THE STAFF INVOLVED WITH THE PROJECT

| STAFF MEMBERS AND OTHERS | RATE PER HOUR | |
|---|---|---|
| **BILLING FOR CONSULTING PROFESSIONALS** | | |
| HENRY GREEN | $ | 80.00 |
| MICHAEL MONAHAN | $ | 42.00 |
| **TRUSTEE'S STAFF** | | |
| FRANK GINES | $ | 30.00 |
| CHARLES WAHREN | $ | 20.00 |
| (NOT INCLUDING PAYROLL OR OVERTIME COSTS) | | |
| **OTHERS** | | |
| APPROXIMATE COST FOR THREE TEMPORARY CLERKS TO KEY ACTIVITY AND ASSIST IN THE SCHEDULING OF THE | $ | 35.00 |

### PROJECTION FOR A SCHEDULED PAYROLL EVERY OTHER WEEK

| PAYROLL PERIOD | HOURS SPENT | APPROXIMATE PAYROLL | |
|---|---|---|---|
| PERIOD NUMBER ONE - FIRST TWO WEEKS | 650 | $ | 29,868.00 |
| PERIOD TWO - SUBSEQUENT TWO WEEKS | 650 | $ | 29,868.00 |
| PERIOD THREE - SUBSEQUENT TWO WEEKS | 650 | $ | 29,868.00 |
| PERIOD FOUR - SUBSEQUENT TWO WEEKS | 610 | $ | 26,982.00 |
| PERIOD FIVE - SUBSEQUENT TWO WEEKS | 610 | $ | 26,982.00 |
| PERIOD SIX - SUBSEQUENT TWO WEEKS | 330 | $ | 16,142.00 |
| PERIOD SEVEN - SUBSEQUENT TWO WEEKS | 330 | $ | 16,142.00 |
| PERIOD EIGHT - SUBSEQUENT TWO WEEKS | 330 | $ | 16,142.00 |
| PERIOD NINE - SUBSEQUENT TWO WEEKS | 330 | $ | 16,142.00 |
| PERIOD TEN AND FINAL | 100 | $ | 8,000.00 |
| **TOTALS** | **4,590** | **$** | **216,136.00** |