

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SLR:BPS

*One Pierrepont Plaza*
*Brooklyn, New York 11201*

*Mailing Address:*   *147 Pierrepont Street*
*Brooklyn, New York 11201*

September 29, 2006

Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>    Re:   United States v. Belfort, et al.,
>          Criminal Docket No. CR-98-0859 (EDNY)

>    Re:   United States v. Lavigne,
>          Criminal Docket No. CR-00-1114 (EDNY)

Dear Judge Gleeson:

The United States respectfully encloses for Your Honor's review and signature two proposed orders providing for the transfer and distribution of restitution funds. One proposed order is submitted for each of the above-referenced criminal cases.

Background of the Porush Case

On June 10, 2002, Your Honor imposed a judgment of restitution in the amount of $200,425,851.31, plus interest against defendant Daniel Porush ("Porush") in United States v. Porush, CR-98-0859 (the "Porush case"). On October 14, 2003, Your Honor imposed a judgment of restitution in the amount of $110,362,993.87, plus interest against Porush's co-defendant Jordan Ross Belfort ("Belfort"). Porush and Belfort are jointly and severally liable for the restitution judgments.[1]

Pursuant to plea agreements with the United States, Porush and Belfort were required to forfeit certain properties (the "Forfeited Property") with an estimated value of $11,000,000. Because of the number of victims involved and the existence of a trustee for the

---

[1]As explained more fully below, defendant Elliot Lavigne is also jointly and severally liable for restitution with defendants Porush and Belfort.

liquidation of Stratton Oakmont, Inc., an entity owned by Porush and Belfort, among others, the Court "so ordered" the Second Amended Stipulation And Order Appointing The Trustee For the Liquidation of Stratton Oakmont, Inc. To Distribute The Forfeited Proceeds (the "Second Amended Stipulation") on April 11, 2002.  See Copy of the Second Amended Stipulation, attached hereto as Exhibit A.

The Second Amended Stipulation provided, among other things, that the net proceeds of the moneys forfeited by the defendants Porush and Belfort constitute a Restitution Fund to be distributed to the victims of the offense of conviction.  The Second Amended Stipulation further provided that the United States Marshals Service (the "USMS") transfer the Restitution Fund to Harvey R. Miller, Esq., as Trustee ("Trustee") for the Liquidation of Stratton Oakmont, Inc. ("Stratton Oakmont Liquidation").

The Trustee distributed nearly $11,200,000 of the funds collected in the instant case from the Restitution Fund to a total of 1,513 victims and subsequently returned approximately $460,000 to the Clerk of Court (the "Transferred Funds").  This sum represented amounts that could not be distributed because certain of the claimants could not be located or did not accept the proffered funds.  The Trustee also provided the Clerk of Court with the names, addresses, and loss amounts for the victims (the "Trustee Victim List").

The Stratton Oakmont Liquidation has terminated.  On January 28, 2005, Your Honor entered an order approving the Trustee's final application for fees in connection with the distribution of the Restitution fund.

Pursuant to 18 U.S.C. § 3613, defendants Porush and Belfort remain liable for the outstanding balance of the restitution judgment, which shall be paid to the Clerk of the Court for distribution.

Background of the Lavigne Case

On June 3, 2002, Your Honor imposed a judgment of restitution in the amount of $8,000,689 against defendant Elliot Lavigne ("Lavigne") in United States v. Lavigne, CR-00-1114 (the "Lavigne case").  Lavigne is jointly and severally liable for the restitution judgment with Porush and Belfort.  The judgment provided that the defendant "gets an offset against the restitution for the amount of $1,015,300.06 already paid."[2]  See Copy of the Lavigne judgment, attached hereto as Exhibit B.

On the same day, Your Honor issued an Order (the "Restitution Order") in the above-captioned case which provided that moneys received by the United States Marshals Service and/or the Clerk of the Court, as part of the forfeiture payments made by Lavigne, be transferred to the Trustee.  The Restitution Order further provided that the Trustee would deposit

---

[2]In fact, Lavigne paid approximately $500,000.00 to the United States Marshals Service. The remaining approximately $515,000.00 was received by this Office after the liquidation of the Adler Coleman bankruptcy was completed and has been forwarded to the USMS.  Lavigne was a creditor of the Adler Coleman bankruptcy.

moneys received as part of the forfeiture payments made by Lavigne into a Restitution Fund created pursuant to the Second Amended Stipulation. See Copy of the Restitution Order, attached hereto as Exhibit C. As set forth in footnote 2, herein, the Trustee did not receive the forfeiture payments made by Lavigne; they are in the possession of the United States Marshals Service (the "USMS").

Pursuant to 18 U.S.C. § 3613, Lavigne remains liable for the outstanding balance of the restitution judgment, which shall be paid to the Clerk of the Court for distribution.

The Proposed Orders

Based on the foregoing and in order to provide for a more expedient method for distribution of the restitution fund, the United States submits the enclosed proposed orders.

The order in the Porush case provides that the Transferred Funds and any and all additional payments made by Porush and Belfort toward the restitution judgment shall be distributed by the Clerk of the Court to the victims identified in the Trustee Victim List.

The order in the Lavigne case provides that any moneys being held by the USMS as part of the forfeiture payments made by Lavigne, including the funds received as part of the Adler Coleman bankruptcy, shall be transferred to the Clerk of Court and applied to the outstanding restitution judgment imposed against Lavigne. The order further provides that the any moneys received from the USMS as part of the forfeiture payments made by Lavigne and any payments made by Lavigne for the outstanding restitution judgment shall be distributed by the Clerk of the Court to the victims identified in the Trustee Victim List.

Thank you for Your Honor's consideration of this matter.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney

By:

BETH P. SCHWARTZ
Assistant U.S. Attorney
(718) 254-6017

Encl.

cc:     Jim Corsiglia, Esq.
        Cleary Gottlieb Steen & Hamilton, LLP
        One Liberty Plaza
        New York, NY 10006

EXHIBIT A

CIM

FILED ORIGINAL
IN CLERK'S OFFICE
U. S. DISTRICT COURT E.D. N.Y;

★  APR 1 2 2002  ★

TIME A.M._____
P.M._____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v -

JORDAN BELFORT AND
DANIEL PORUSH

Defendants.

Cr. No. 98-859 (JG)
(Gleeson, J.).

## SECOND AMENDED STIPULATION AND ORDER APPOINTING THE TRUSTEE FOR THE LIQUIDATION OF STRATTON OAKMONT, INC. TO DISTRIBUTE THE FORFEITURE PROCEEDS

This Stipulation (the "Stipulation") is made by and between Harvey R. Miller,

Esq., as Trustee (the "Trustee") for the Liquidation of Stratton Oakmont, Inc. ("Stratton

Oakmont"), under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa, et

seq., by its undersigned attorney, and the United States of America, by its attorney, Alan

Vinegrad, United States Attorney for the Eastern District of New York, Richard Weber.

Assistant United States Attorney, of counsel.

WHEREAS, Stratton Oakmont was a securities broker/dealer, and a member of

the National Association of Securities Dealers ("NASD") and the Securities Investor

Protection Corporation ("SIPC"); and

WHEREAS, on December 5, 1996, Stratton Oakmont was expelled from the

NASD as a result of a decision issued by the National Business Conduct Committee of

the NASD which found, among other things, that Stratton Oakmont's history of

disciplinary incidents established an identifiably consistent pattern of willful disregard for

regulatory requirements and regulatory authority; and

GOVERNMENT
EXHIBIT

WHEREAS, on January 24, 1997, Stratton Oakmont commenced a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

WHEREAS, on January 29, 1997, upon an application of SIPC, the filing of which stayed the Chapter 11 Case, the Honorable John E. Sprizzo, Judge of the United States District Court for the Southern District of New York entered an order which, inter alia, placed Stratton Oakmont in liquidation under SIPA and appointed the Trustee for the purpose of liquidating the business of Stratton Oakmont pursuant to section 78eee(b)(3) of SIPA (the "SIPA Proceeding"); and

WHEREAS, in late February of 1997, pursuant to an order of the Bankruptcy Court dated February 6, 1997, the Trustee caused claim forms to be mailed to approximately 22,000 Stratton Oakmont investors and creditors; and

WHEREAS, pursuant to SIPA, the last day for the initial filing of claims by Stratton Oakmont investors to obtain the maximum protection afforded to "customers" under SIPA was set as April 29, 1997 and the last day for the filing of all "customer" and general creditor claims, including those of Stratton Oakmont's employees, was set as August 28, 1997; and

WHEREAS, in the SIPA Proceeding, the Trustee received approximately 3,368 claims for protection afforded to "customers" under SIPA and 276 general creditor claims; and

WHEREAS, in connection with marshalling the assets of Stratton Oakmont's estate, the Trustee has been investigating various claims against third parties; and

WHEREAS, based upon these investigations, the Trustee, his attorneys and financial advisors have developed the legal and factual bases for ascertaining claims belonging to Stratton Oakmont's estate against former officers, directors, and employees of Stratton Oakmont, as well as against other entities and individuals; and

WHEREAS, on May 13, 1998, the Trustee commenced an adversary proceeding (the "Adversary Proceeding") against Daniel Porush ("Porush"), Jordan Belfort ("Belfort"), both former officers and directors of Stratton Oakmont, and others seeking approximately $54 million based upon various breaches of fiduciary duty and fraudulent transfers and conveyances; and

WHEREAS, subsequent to the commencement of the Adversary Proceeding, on or about September 8, 1998, under an indictment (the "Indictment") filed in the United States District Court of the Eastern District of New York entitled United States of America v. Jordan Belfort and Daniel Porush and bearing Cr. No. 98-859 (E.D.N.Y.) (JG), the grand jury charged Porush, Belfort and certain co-conspirators with, inter alia, securities fraud and money laundering conspiracy in connection with the activities of Porush and Belfort at Stratton Oakmont over a period of time commencing in 1991; and

WHEREAS, pursuant to plea agreements with the United States, Porush and Belfort were required to forfeit certain properties (the "Forfeited Property"), which they represented were illegal proceeds traceable to securities fraud in connection with their activities at Stratton Oakmont; and

WHEREAS, the United States Marshals Service has estimated the value of the Forfeited Property to be approximately $11,000,000.00; and

WHEREAS, pursuant to 18 U.S.C. § 982(a)(1) and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States is now entitled to possession of the Forfeited Property; and

WHEREAS, 21 U.S.C. § 853, which incorporates by reference 18 U.S.C. § 982, provides for the distribution of the Forfeited Property following the publication of notice by the United States of America; and

WHEREAS, pursuant to 21 U.S.C. § 853, 18 U.S.C. § 982, 28 C.F.R. Part 9 and other applicable rules and laws, the United States Attorney General has the discretion and authority to distribute the proceeds of the Forfeited Property to persons who qualify as victims of specified criminal activities; and

WHEREAS, subsequent to the filing of the Indictment, the Trustee's attorneys and representatives of SIPC and of the Office of the United States Attorney for the Eastern District of New York (the "United States Attorney") met and discussed, among other things, the claimants in the SIPA Proceeding, the claims filed in the SIPA Proceeding and the losses suffered by individuals and entities who qualify under the applicable statutory and regulatory authorities of Titles 18 and 21, United States Code, and Title 28, C.F.R., as victims of the criminal activities which are charged in the Indictment (the "Victims"), and the distribution of the net proceeds realized from the sale of the Forfeited Property (such net proceeds, the "Restitution Fund") for the benefit of the Victims; and

WHEREAS, the Forfeited Property represents, in whole or in part, assets which the Trustee otherwise sought to recover in the Adversary Proceeding; and

WHEREAS, the United States Attorney has determined that, based upon the claims filed in the SIPA Proceeding and the Trustee's familiarity with, and access to, the books and records of Stratton Oakmont, the Trustee and his staff are uniquely qualified to adjust, evaluate, investigate, review and determine losses of Victims incurred in the trading of securities as clients of Stratton Oakmont; and

WHEREAS, to facilitate the most economical, expeditious and efficient method of distributing the Restitution Fund, the United States Attorney has requested, and the Trustee has agreed, that the Trustee shall be appointed by the Court to administer the Restitution Fund to compensate Victims in the manner set out below;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and subject to the approval of this Court, the parties hereby stipulate, consent and agree to the following terms and conditions:

1.  Creation of the Restitution Fund. The United States, through the United States Attorney or other agents, shall be responsible for the disposition and liquidation of all of the Forfeited Property and the creation of the Restitution Fund. The Trustee shall not be responsible for disposing or selling any such Forfeited Property. The United States Marshals Service will make an irrevocable transfer of the Restitution Fund (including all interest paid or accrued) to the Trustee, which the Trustee shall hold as a separate fund from other property held by the Trustee in the SIPA Proceeding. The United States Marshals Service is Ordered to transfer to the Trustee all monies currently being held in the Marshals account, plus interest, relating to case Nos. 98-CR. 859 and 00-CV-4538.

2.      Notice. The United States has published Notice at least thirty (30) days

prior to the hearing (the "Hearing") to approve the Stipulation of the proposed

distribution in the NY Times to any and all parties asserting any interest in the Forfeited

Property. In addition, the United States has provided written notice by mail of this

proposed Stipulation to all parties who have contacted the United States Attorney to

assert any interest in the Forfeited Property.

3.      Eligible Claimants. The following individuals and/or entities shall be

entitled to participate in the Restitution Fund, as provided for herein:  (A) those

individuals and/or entities that have previously filed claims with the Trustee in the SIPA

Proceeding seeking an identified amount of alleged capital losses (excluding general

creditors who have filed claims that are not based upon any securities transactions with

Stratton Oakmont) (the "SIPA Proceeding Claimants"); and (B) any individuals and/or

entities (other than SIPA Proceeding Claimants) that have asserted claims, either: i) prior

to the published Notice or ii) within 30 days after the last publication of Notice, with the

United States Attorney as Victims against the Forfeited Property to the extent that the

United States Attorney determines that such individuals and/or entities should be treated

as Victims. The individuals and/or entities satisfying the criteria of (A) and/or (B) above

shall hereinafter be referred to as "Eligible Claimants". The United States Attorney shall

have the right, upon the recommendation of the Trustee or otherwise, to determine that

any individual and/or entity that has asserted a claim as provided for herein is not a

Victim and, thus, exclude such individual and/or entity from the pool of Eligible

Claimants entitled to share in the Restitution Fund.

4.    Administration of the Restitution Fund.

(A)    The Trustee shall administer the Restitution Fund as a separate fund from the estate in the SIPA Proceeding in accordance with the terms of this Stipulation. Based upon the books and records of Stratton Oakmont in the Trustee's possession, the Trustee shall determine the claims for Total Loss (as defined below) of Eligible Claimants for distribution purposes hereunder. In so doing, the Trustee may also consider additional information as may be supplied by Eligible Claimants to assist in the determination of the Total Loss.

(B)    Eligible Claimants shall be entitled to receive a pro rata distribution from the Restitution Fund based upon their allowed claims for Total Loss as determined by the Trustee, subject only to the review and approval of the United States Attorney; *provided however* that, any Eligible Claimant who accepts distribution from the Restitution Fund agrees to waive any and all right to pursue further or additional recovery against defendant Belfort in connection with any other existing, concluded or contemplated proceedings, actions and/or arbitrations, including but not limited to, the right to enforce any judgment against Belfort, except that such Eligible Claimant is not precluded from recovering against Belfort in connection with any restitution and/or forfeiture proceedings or funds; and *provided further* that, any distribution to be made to the Eligible Claimants shall be subject to a set-off for any funds, or other remuneration, previously received by such Eligible Claimants from any source relating to the subject matter of the Total Loss claims. The Trustee shall pay Eligible Claimants their pro rata portion of the Restitution Fund following the determination of all Total Loss claims.

(C)     The Trustee shall have the exclusive right to determine the amount and

allowance of Total Loss claims of the Eligible Claimants and whether such claims are

entitled to distributions from the Restitution Fund, subject only to the United States

Attorney's approval of the Trustee's determinations.

(D)     As provided for herein, "Total Loss" claims means only claims for capital

losses in an Eligible Claimant's account(s) with Stratton Oakmont, which shall be

determined in a manner mutually agreed upon by the Trustee and the United States
and consistent with the Trustee's representations to the Court at the hearing of

Attorney. "Total Loss" claims shall not include, *inter alia*, claims for "losses" based
April 4, 20::

upon hypothetical, speculative profits from contemplated sales of Stratton Oakmont

house stocks or other securities. In addition, the following categories of claims shall not

be entitled to payment from the Restitution Fund: (i) claims by "insiders" of Stratton

Oakmont as defined under 11 U.S.C. § 101(31); (ii) claims by malefactors and/or

recipients of avoidable transfers whose claims may be equitably subordinated or

disallowed under 11 U.S.C. § 502(d) in the Chapter 11 Case; (iii) claims for punitive

damages, exemplary damages, attorneys' fees or interest; and (iv) claims that are

contractually subordinated to the claims of other creditors.

(E)     Any determinations made with respect to the allowance of Total Loss

claims of Eligible Claimants shall apply only with respect to the administration of the

Restitution Fund and shall not be admissible with respect to the determination of the

"allowance" of any claims in the SIPA Proceeding.

(F)     The Trustee shall not make any distributions to SIPC from the Restitution

Fund in respect of sums SIPC has advanced to pay administrative expenses in this

proceeding. However, the Trustee shall be permitted to make distributions from the

Restitution Fund to SIPC in respect of any allowed claim of an Eligible Claimant to the extent and in the same proportion as such claim has been satisfied in whole or in part with monies advanced by SIPC and to which SIPC is a subrogee.

(G)     The Trustee shall be reimbursed or paid from the Restitution Fund for all costs and expenses of administering the Restitution Fund and the claims process relating to the determination of Eligible Claimants and Total Loss claims (including, but not limited to, attorneys' fees and the costs of consultants and employees engaged in the processing of the claims of Eligible Claimants). Set forth in the attached Exhibit A is the current rate with respect to the attorneys and consultants who, it is contemplated, will perform services on behalf of the Trustee in connection with administering the Restitution Fund. It is anticipated that the consultants (and other employees) shall perform the majority of the necessary work.

(H)     With respect to payments to the Trustee in connection with work to be performed by consultants and other employees (exclusive of attorneys) in administering the Restitution Fund and the claims process relating to the determination of Eligible Claimants and Total Loss claims, such payments shall be made as follows: i) upon approval of this Stipulation by the Court, advance payment from the Restitution Fund shall be made to the Trustee in the amount of $216,136.00, the projected cost associated with reviewing and processing claims for distribution to Eligible Claimants as reflected in Exhibit B attached hereto; and ii) in the event additional payments are needed to complete the distribution to Eligible Claimants, payment to the Trustee shall be made from the Restitution Fund upon approval by the District Court, with notice to the United States Attorney. Any such additional payments requested by the Trustee shall be

approved by the Court if the amounts sought are reasonable and represent actual services rendered.

(I)     With respect to payments to the Trustee in connection with work performed by attorneys in administering the Restitution Fund and the claims process relating to the determination of Eligible Claimants and Total Loss claims, the Trustee shall submit requests for payment to the District Court for approval, upon notice to the United States Attorney. Any such payments requested shall be approved by the Court if the amounts sought are reasonable and represent actual services rendered.

(J)     The Trustee agrees that he will not request fees pursuant to Bankruptcy Code § 326(a) relating to the Restitution Fund. However, the Trustee shall be allowed reasonable compensation from the Restitution Fund as compensation for the Trustee's services, based upon his actual time and hourly rate, subject to Court approval.

(K)     Interest that accrues in the Restitution Fund shall be added to the Restitution Fund.

5.     Final Report. Within 30 days of making all distributions from the Restitution Fund, the Trustee will provide the United States Attorney with a schedule of the names of all Eligible Claimants who have received distributions and the amounts each of them has received.

6.     Retention of Jurisdiction. The United States District Court for the Eastern District of New York shall retain exclusive jurisdiction to hear and determine disputes regarding the terms of this Stipulation and to enter such orders and judgments as are necessary or appropriate to carry out the provisions of this Stipulation, including but not limited to orders interpreting, clarifying or enforcing the provisions hereof.

7.    Amendments. Modifications and Waivers. No provision of this Stipulation may be amended, modified or waived unless such amendment, modification or waiver is in writing signed by the parties hereto and approved by this Court.

8.    Successors and Assigns. This agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

9.    Counterparts. This Stipulation may be executed by one or more of the parties hereto on any number of separate counterparts and all said counterparts taken together shall be deemed to constitute one and the same instrument.

10.    Governing Law. The rights and obligations arising under this Stipulation shall exclusively be governed by, and construed and enforced in accordance with, the laws of the State of New York.

11.    Court Approval. This Stipulation is subject to approval by the United States District Court for the Eastern District of New York. If the Court fails to authorize and approve the Stipulation in its entirety, the Stipulation shall be null and void and will have no further force and effect.

12.    Authority to Execute Stipulation. Each of the undersigned attorneys

represents and warrants that he or she has all necessary authority to execute the

Stipulation on behalf of the party indicated.

Dated as of this 5th day of April, 2002

                                        ALAN VINEGRAD
                                        United States Attorney
                                        Eastern District of New York


                                By: _____
                                        Richard Weber (RW 9535)
                                        Assistant U.S. Attorney
                                        One Pierrepont Plaza, 14th Floor
                                        Brooklyn, New York 11201
                                        (718) 254-6033


                                        WEIL, GOTSHAL & MANGES, LLP
                                        Attorneys for Harvey Miller, Esq. as Trustee in
                                        the Liquidation of Stratton Oakmont, Inc., and
                                        not Individually


                                By: _____
                                        Steven Alan Reiss (SR 5889)
                                        767 Fifth Avenue
                                        New York, New York 10153-0119
                                        (212) 310-8000


SO ORDERED

_____    4 - 11 - 02
The Honorable John Gleeson
United States District Court

A TRUE COPY
ATTEST
DATED APR 24 2002
ROBERT C. HEINEMANN
                                        CLERK
BY _____
                    DEPUTY CLERK

12

EXHIBIT A

## EXHIBIT A

| ATTORNEYS | RATE |
|---|---|
| **New York** | |
| Steven A. Reiss | 630.00 |
| Theodore E. Tsekerides | 430.00 |
| Gary Ticoll | 330.00 |

### CONSULTANTS

**Stratton Oakmont**

| | |
|---|---|
| Henry C. Green, Jr. | 80.00 |
| Michael J. Monahan | 42.00 |

### STAFF

| | |
|---|---|
| Frank Gines | 30.00 |
| Charlie Wahren | 20.00 |

(Not including payroll or overtime costs)

### OTHERS

| | |
|---|---|
| Approximate Costs For Three Temporary Clerks To Key Activity And Assist In Scheduling | 35.00 |

EXHIBIT B

# DISTRIBUTION FOR THE JUSTICE DEPARTMENT

## HOURLY RATES FOR THE STAFF INVOLVED WITH THE PROJECT

| STAFF MEMBERS AND OTHERS | | RATE PER HOUR |
|---|---|---|
| **BILLING FOR CONSULTING PROFESSIONALS** | | |
| HENRY GREEN | $ | 60.00 |
| MICHAEL MONAHAN | $ | 42.00 |
| | | |
| **TRUSTEE'S STAFF** | | |
| FRANK GINES | $ | 30.00 |
| CHARLES WAHREN | $ | 20.00 |
| (NOT INCLUDING PAYROLL OR OVERTIME COSTS) | | |
| **OTHERS** | | |
| APPROXIMATE COST FOR THREE TEMPORARY CLERKS TO KEY ACTIVITY AND ASSIST IN THE SCHEDULING OF THE | $ | 15.00 |

## PROJECTION FOR A SCHEDULED PAYROLL EVERY OTHER WEEK

| PAYROLL PERIOD | HOURS SPENT | | APPROXIMATE PAYROLL |
|---|---|---|---|
| PERIOD NUMBER ONE - FIRST TWO WEEKS | 650 | $ | 29,868.00 |
| PERIOD TWO - SUBSEQUENT TWO WEEKS | 650 | $ | 29,868.00 |
| PERIOD THREE - SUBSEQUENT TWO WEEKS | 650 | $ | 29,868.00 |
| PERIOD FOUR - SUBSEQUENT TWO WEEKS | 610 | $ | 25,982.00 |
| PERIOD FIVE - SUBSEQUENT TWO WEEKS | 610 | $ | 25,982.00 |
| PERIOD SIX - SUBSEQUENT TWO WEEKS | 330 | $ | 16,142.00 |
| PERIOD SEVEN - SUBSEQUENT TWO WEEKS | 330 | $ | 16,142.00 |
| PERIOD EIGHT - SUBSEQUENT TWO WEEKS | 330 | $ | 16,142.00 |
| PERIOD NINE - SUBSEQUENT TWO WEEKS | 330 | $ | 16,142.00 |
| PERIOD TEN AND FINAL | 100 | $ | 8,000.00 |
| | | | |
| TOTALS | 4,590 | $ | 216,136.00 |

EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U. S. DISTRICT COURT E.D. N.Y.

UNITED STATES OF AMERICA,

**JUDGMENT INCLUDING SENTENCE**

VS.

JUN 1 3 2002

NO.: CR 00-1114(JG)

TIME A.M. _____
P.M. _____

ELLIOT M. LAVIGNE

| Eric Tirschwell | Anthony Mancuso | Benjamin Brafman, Esq. |
|---|---|---|
| Assistant United States Attorney | Court Reporter | Defendant's Attorney |

The defendant **Elliot M. Lavigne** having pled guilty to count 3 of the indictment accordingly, the defendant is ADJUDGED guilty of such Count(s), which involve the following offenses:

| TITLE AND SECTION | NATURE AND OFFENSE | COUNT NUMBERS |
|---|---|---|
| 18USC1956(h) AND 18USC1956(a)(1) | CONSPIRACY TO COMMIT MONEY LAUNDERING | THREE |

The defendant is sentenced as provided in pages 2 through 5 of the Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1988.

___ The defendant is advised of his/her right to appeal within ten (10) days.

___ The defendant has been found not guilty on count(s) and discharged as to such count(s)

__X__ **Open counts are dismissed on the motion of the United States.**

___ The mandatory special assessment is included in the portion of Judgment that imposes a fine.

__X__ **It is ordered that the defendant shall pay to the United States a special assessment of $50.00 which shall be due immediately.**

It is further **ORDERED** that the defendant shall notify the United States Attorney for this District within 30 days of any change of residence or mailing address until all fines, restitution, costs and special assessments imposed by this Judgment are fully paid.

| 59371-053     4/22/52 | JUNE 3, 2002 |
|---|---|
| Defendant's USM #/ Date of Birth | Date of Imposition of sentence |
| **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** | |
| Defendant's Soc. Sec. Number | JOHN GLEESON, U.S.D.J. |
| **111 EAST SADDLE RIVER ROAD** | 6 - 05 - 02 |
| **SADDLE RIVER, NJ 07458** | Date of signature |
| Defendant's mailing address | A TRUE COPY ATTEST |
| | DEPUTY CLERK |

DEFENDANT:   **ELLIOT M. LAVIGNE**                    JUDGMENT-PAGE 2 OF 5
CASE NUMBER: **CR 00-1114   (JG)**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of:   **THIRTY-SEVEN (37) MONTHS.**

_____   The defendant is remanded to the custody of the United States Marshal.

**__X__   The Court recommends that the defendant participate in the 500 hour  drug treatment program while incarcerated; and that the defendant be designated to the Eglin Air Force Base Correctional Facility in Florida, if consistent with the Bureau of Prison policy.**

_____   T he defendant shall surrender to the United States Marshal for this District.

**__X__**   The defendant  shall  surrender  for  service  of  sentence at the institution designated by the Bureau of Prisons.

          __X__    -12:00 noon.  **8/5/02**                .
          _ X      As notified by the United States Marshal.
          _        As notified by the Probation Office.

### RETURN

I have executed this Judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____ at _____ with a certified copy of this Judgment.

                          _____
                          United States Marshal

                          By:_____

DEFENDANT: **ELLIOT M. LAVIGNE**                    JUDGMENT-PAGE 3 OF 5
CASE NUMBER: **CR 00- 1114    (JG)**

## SUPERVISED RELEASE

Upon release from Imprisonment, the defendant shall be on supervised release for a term of:   **THREE (3) YEARS**

**The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.**

While on supervised release, the defendant shall not commit another Federal, State, or Local crime and shall comply with the standard conditions that have been adopted by this Court (Seaforth on the following page).

The defendant is prohibited from possessing a firearm.

The defendant shall not illegally possess  a controlled substance.

If this Judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:


**THE DEFENDANT IS TO COMPLY WITH THE ORDER OF FORFEITURE, RESTITUTION (COPIES OF THE ORDERS ATTACHED) AND FINE; MAKE FULL FINANCIAL DISCLOSURE AS DIRECTED BY THE PROBATION DEPARTMENT; RECEIVE  SUBSTANCE ABUSE TREATMENT AS DIRECTED BY THE PROBATION DEPARTMENT.**

DEFENDANT: **ELLIOT M. LAVIGNE**                    JUDGMENT-PAGE 4 OF 5
CASE NUMBER: **CR 00-1114  (JG)**

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not leave the judicial district without the permission of the court or probation officer;

2) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

8) The defendant shall support his or her dependents and meet other family responsibilities;

5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons:

6) The defendant shall notify the probation officer within 10 days prior to any change in residence or employment;

7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a Physician;

8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;

12) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court;

13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: ELLIOT M. LAVIGNE                    JUDGEMENT 5 OF 5
CASE NUMBER: CR 00-1114 (JG)

## CRIMINAL MONETARY PENALTIES

| COUNT | FINE | **RESTITUTION** |
|---|---|---|
| 3 | **$7,500.00** | **$8,000,689.00** |

### THE FINE IS TO BE PAID IMMEDIATELY.

-----------------------------------------------------------------------------------------------------------------

RESTITUTION

_____The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A, and 113A of the Title 18 for offenses committed on or after 9/13/1998, until _____. an amended judgment in a Criminal case will be entered after such determination.

_____The defendant shall make restitution to the following payees in the amounts listed below

        If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below

**TOTALS: $8,000,689.00 _____**
Findings for the total amount of losses are required under Chapters 109A, 110,110A, 113A of the Title 18 for offenses committed on or after September 13, 1998.

        **THE DEFENDANT GETS AN OFFSET AGAINST THE RESTITUTION FOR THE AMOUNT OF $1.015,300.06 ALREADY PAID. THE REMAINING BALANCE SHALL BE PAID $12,000.00 A MONTH UPON HIS RELEASE FROM PRISON FOR A PERIOD OF FIVE (5) YEARS.**

DEFENDANT: **ELLIOT M. LAVIGNE**
CASE NUMBER: **CR 00-1114 (JG)**

## STATEMENT OF REASONS

___X___  The Court adopts the factual findings and guideline application in the pre-sentence report.

_____  The Court makes the following findings regarding the guidelines calculations:

### GUIDELINE RANGE DETERMINATION BY THE COURT

Total Offense Level: _____21_____

Criminal History Category: _____I_____

Imprisonment Range: __37-46___ months

Supervise Release Range: ___2-3  YEARS___

Fine Range: $ 7,500.00_____        TO        $4,000,000.00_____

Restitution Range: $ 8,000,369.00_____    TO        $_____

### DEPARTURES FROM THE GUIDELINES RANGE

___X___  The sentence is within the guideline range, that range DOES NOT EXCEED 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.
OR

_____  The sentence is within the guideline range, that range EXCEEDS 24 months, and the sentence is imposed for the following reasons:

_____  Upon motion of the government, as a result of defendant's substantial assistance.

**For the following specific reason(s):**

EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA                    ORDER

       - against -                    Docket No.
                                            CR-00-11**44**
ELLIOT M. LAVIGNE,
                                            (Gleeson, J.)
           Defendant.
- - - - - - - - - - - - - - - - - X


      WHEREAS, on July 27, 2001, the defendant ELLIOT LAIGNE
pled guilty to Count Three of the Indictment filed in the above-
captioned case; and

      WHEREAS, as part of his plea agreement, the defendant
ELLIOT LAVIGNE agreed to forfeit: (a) $500,000 and (b) his
approximately $515,300.06 interest in the Adler Coleman
bankruptcy, all by the time of sentencing (collectively the
"Forfeiture Payments"), and the parties further agreed that both
sums would be counted as an offset against any Court-ordered
restitution; and

      WHEREAS, on June 3, 2002, this Court ordered the
defendant ELLIOT LAVIGNE to pay restitution in the amount of
$ _8,000,689_ ; and

      WHEREAS, on April 11, 2002, the Court signed a Second
Amended Stipulation and Order Appointing the Trustee for the
Liquidation of Stratton Oakmont, Inc. to Distribute the
Forfeiture Proceeds (the "Stipulation") executed in the related
case of United States v. Jordan Belfort and Daniel Porush, No.

2

CR-98-859 (E.D.N.Y.) (JG) (the "Second Amended Stipulation and Order") (copy annexed hereto as Exhibit 1); and

WHEREAS, the defendant ELLIOT LAVIGNE and the Government consent to the disposition of any monies collected toward the payment of all forfeiture and restitution that the Court has ordered the defendant ELLIOT LAVIGNE to pay, past and future, as set forth below.

NOW THEREFORE, IT IS HEREBY ORDERED as follows:

1.   The Clerk of this Court and/or the United States Marshal's Service shall pay forthwith any moneys received as part of the Forfeiture Payments and all interest which has accrued thereto to Harvey R. Miller, Esq., as Trustee (the "Trustee") for the Liquidation of Stratton Oakmont, Inc. ("Stratton Oakmont") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq., c/o Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153-0119, in his capacity set forth in the Second Amended Stipulation and Order.

2.   The Clerk of this Court and/or the United States Marshal's Service shall pay to the Trustee any and all additional funds received as payment toward or on account of any restitution which the Court orders the defendant ELLIOT LAVIGNE to pay.

3.   The Trustee shall deposit any and all funds received in accordance with this Order in the Restitution Fund created pursuant to the Second Amended Stipulation and Order.

3

      4.   The Trustee shall pay any and all funds received in accordance with this Order to the victim-clients of Stratton Oakmont pursuant to the procedures set forth in the Second Amended Stipulation and Order.

Dated:    Brooklyn, New York
          June 3, 2002

                                    HONORABLE JOHN GLEESON
                                    United States District Judge