

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

October 11, 2013

By Hand
**SUBMITTED UNDER SEAL**
Honorable John Gleeson
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States of America v. Jordan Ross Belfort,
>       <u>Criminal Docket No. CR-98-0859 (EDNY)(JG)</u>

Dear Judge Gleeson:

In accordance with the Court's October 8, 2013 Order, the United States responds to Susan Harrigan's October 4, 2013 letter regarding the total amount of Jordan Belfort's ("Belfort" or the "defendant") restitution payments, and whether the court-ordered payment plan has changed.   In light of the nature of the information provided in this letter, and the position of the Department of Justice that amount of payments made by a defendant is protected by the Privacy Act, 5 U.S.C. 552a, the United States respectfully requests that the letter be filed under seal.

In brief response, Belfort has paid a total of $11,629,143.64 toward the restitution judgment.  The United States contends that the defendant remains obligated to continue to pay restitution at the rate of 50% of his gross income, as set forth in the judgment.  Mr. Belfort has taken the position that because his term of supervised release has terminated, he is no longer obligated to comply with the court-ordered payment plan.  A more detailed description of the case and payment history is set forth below.

**Background**

On July 18, 2003, Your Honor sentenced Belfort, among other things, to pay restitution in the amount of $110,362,993.87, plus interest.[1] Pursuant to the judgment, the defendant was ordered to pay restitution at the rate of 50% of his gross income beginning one month after release from prison. He was also sentenced to three years of supervised release. The defendant was released from incarceration on or about April 28, 2006. His term of supervised release terminated in or about April 2009.

Pursuant to plea agreements with the United States, Belfort and his co-defendant Daniel Porush were required to forfeit certain properties with an estimated value of $11,000,000. Thus, the bulk of the funds Belfort has paid toward restitution, approximately $10.4 million, were forfeited, and paid pursuant to terms set forth in the defendant's plea agreement.

A court-appointed trustee distributed nearly $11,200,000 of the forfeited funds collected in the instant case from the Restitution Fund to a total of 1,513 victims and subsequently returned approximately $460,000 to the Clerk of Court.[2] This amount represented money that could not be distributed because certain of the claimants could not be located or did not accept the proffered funds. The Trustee also provided the Clerk of Court with the names, addresses, and loss amounts for the victims.

In addition, the United States restrained assets owed to Belfort as a creditor in In re Adler, Coleman Clearing Corp., 95-08203 (SDNY)(REG).  As a result, the United States received a payment of $223,678.59 in December 2005.

**Payment History**

In  or about April 2007, after learning about a deal to publish Belfort's book, *The Wolf of Wall Street*, the United States served restraining notices on Bantam Books, Warner Brothers, and Appian Way, entities which might be obligated to make payments to Belfort. Subsequently, the United States reached an agreement with Belfort whereby the United States would receive 50% of the proceeds owing to the defendant.[3] The agreement

---

[1] Belfort is jointly and severally liable for this judgment with co-defendant Daniel Porush and Elliot Lavigne, who was convicted in United States v. Lavigne, CR-00-1114 (EDNY)(JG). Porush was ordered to pay restitution in the amount of $200,425,851.31, plus interest. Lavigne was ordered to pay restitution in the amount of $8,000,689.

[2] Because the forfeited amount included assets forfeited by both Porush and Belfort, the forfeited funds were applied to the "accounts" of the defendants, *pro rata.*

[3] The agreement provided that 15% of the monies would be paid first to Belfort's agent and the remaining amount would be split 50/50 between the United States and Belfort.

was memorialized in writing and made a part of a restraining notice served upon the defendant's agent, the Intellectual Property Group, which disbursed the payments. Subsequently, the United States received $382,910 in 2007, payments of $148,799.19 in 2008, and payments of $170,000 in 2009.

Although he has made these payments, Belfort's payment history and financial information, including tax returns, reveals that he has not fully complied with his payment obligations. Moreover, as noted above, Belfort contends that he is no longer bound by the Court's order that he pay 50% of his gross income toward the restitution judgment.

Thus, in 2010, after his term of supervised release terminated, Belfort made **no payments** toward restitution. His individual income tax return for that year reflects an adjusted gross income of        . In addition, the U.S. Income Tax Return for an S Corporation filed for Wolf Holdings Limited ("Wolf Holdings"), an entity whose sole shareholder was Belfort, reflects gross receipts of           . The business activity of Wolf Holdings is described as "Consultant" and the product or service as "Speaking/Training." After subtractions for deductions and losses, the ordinary business income from Wolf Holdings was reported as        .

In 2011, Red Granite Productions ("Red Granite") purchased rights, including motion picture rights, to *The Wolf of Wall Street.* It also purchased right to *Catching the Wolf of Wall Street.* The purchase price for these rights was $1,045,000, of which Belfort received $940,500. The only other payments guaranteed by the contract with Red Granite $125,000 payable upon commencement of "principal photography," and $125,000 payable on the initial theatrical release of the movie.[4] In 2011, Belfort made payments totaling $21,000 toward the restitution judgment, that is, less than $1,750 per month.

Belfort's individual income tax return for 2011 shows an adjusted gross income of        . However, Global Motivation, an S Corporation, of which Mr. Belfort claims to be a 50% owner, reported gross receipts of           . After numerous deductions from gross receipts, the income of Global Motivation was reduced to         . Among the deductions for Global motivation was a $24,000 restitution payment.[5] JB Global Inc. and Wolf Holdings Limited, two S Corporations, of which Belfort is the sole shareholder reported losses.

_____

[4] The United States served a restraining notice on Red Granite after the approximately $1 million was paid to Belfort and it has received no portion of that amount. The United States did, however, receive one payment of $125,000 from Red Granite. It is our understanding that the second payment of $125,000 has not yet been disbursed.

[5] Our records show restitution payments of $21,000 during 2011.

3

The United States has not received Belfort's tax returns for 2012.  However, a review of certain financial documents shows that, at a minimum, Belfort earned             in salary, as the CFO of Global Motivation.  He also received             from the Fordham Company[6], during the period between April and June 2012.  Accordingly, based on the court-ordered payment plan, Belfort should have paid at least             toward the restitution judgment in 2012.  Instead, Mr. Belfort paid only $158,000.  This amount was paid in monthly installments of approximately $3,000 with one payment of $125,000 which was received directly from Red Granite.

In 2013, Belfort has continued to make monthly payments of $3,000 per month.  The only other payment received this year was a payment of $13,529.66, which was paid pursuant to our agreement regarding the distribution of the net proceeds from the book sales.  Given Belfort's salary of            , apart from earnings from other sources, including, for example, speaking engagements, this monthly amount is insufficient and should  be at least,            , that is, 50% of his gross income.

By letter dated February 27, 2013, the United States advised Belfort that he was delinquent in his payments, pursuant to 18 U.S.C. § 3572(h).  By letter dated June 13, 2013, the United States further advised Belfort that he is in default on his payments, pursuant to 18 U.S.C. § 3572(i).

Based on the foregoing, the United States respectfully requests that the Court make a finding that Belfort is in default pursuant to 18 U.S.C. § 3613A.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:      _____/s/_____
BETH P. SCHWARTZ
Assistant U.S. Attorney
(718) 254-6017

---

[6] The Fordham Company represents Belfort in Australia.  On its website, http://www.thefordhamcompany.com.au/, it describes itself as "one of the most dynamic, versatile and successful media, sport and entertainment management agencies in Australia." Its website describes Belfort as a "world-renowned motivational speaker" whose "life represents the ultimate redemption story."  We have been unsuccessful in our efforts to subpoena records from the Fordham Company because it is based in Australia.  Belfort claims that his agreement with the company is oral and that there are no written agreements or contracts.

4

cc:   <u>By email and first class mail</u>
````` Robert L. Begleiter,  Esq.
      Schlam, Stone & Dolan LLP
      26 Broadway
      New York, NY 10004

      Nicholas M. DeFeis, Esq.
      DeFeis O'Connell & Rose P.C.
      500 Fifth Avenue, 26th Floor
      New York, NY 10110