| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | FOR ONLINE PUBLICATION |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- versus -<br><br>JORDAN ROSS BELFORT,<br><br>                    Defendant. | MEMORANDUM & ORDER<br>98-CR-0859 |

JOHN GLEESON, United States District Judge:

      Larry Posner, a producer of the daily television news program *Inside Edition*, filed a letter with the Court on March 26, 2014, requesting a copy of the names of the victims of Jordan Belfort's crimes and the amount of restitution owed to each victim. *See* Posner Letter, ECF No. 180. The government opposes the request, citing the need to protect the victims' privacy. *See* Gov. Letter in Opp., ECF No. 181.

      Posner's motion implicates several interests. First, Belfort's court-ordered obligation to pay 50% of his gross income each month to his victims (to whom he still owes over $100 million) expired years ago when his term of supervised release ended. However, he remains subject to a broad array of means by which the Department of Justice may collect the restitution due and owing, *see* 18 U.S.C. § 3664(m)(1)(A), and the government has an obligation to the victims to pursue those means aggressively. The government tends to respond to criticism. Publicity (on *Inside Edition* or elsewhere) about Belfort's numerous uncompensated victims may have the positive effect of causing the government to step its efforts up a notch, especially if allegations that Belfort has been earning considerable income here and abroad are true.

The motion also implicates the extremely important right of public access to judicial proceedings, and to the documents submitted in connection with those proceedings. As discussed below, that right of access is not absolute, but the fact remains that the transparency of judicial proceedings is a core value in our system of justice.

On the other hand, I have a strong obligation to Belfort's victims, whose privacy interests find protection both in the common law and in the Crime Victims Rights Act. That statute obligates me to consider the dignity and privacy of more than a thousand individuals who have already been victimized once as a result of Jordan Belfort.

As discussed below, after weighing these interests, I have concluded that Posner's application should be denied.

BACKGROUND

After pleading guilty to securities fraud, money laundering, and fraud in connection with numerous initial public offerings, Belfort cooperated with the government. He testified before me twice and his cooperation played a crucial role in the decisions of a number of other defendants to plead guilty to charges arising out of the various fraudulent schemes Belfort engaged in. He was sentenced in October 2003 to a 42-month term of incarceration, which was followed by 3 years of supervised release. I also imposed an order of restitution in the amount of $110,362,993.87, and directed that Belfort pay 50% of his monthly gross income during his term of supervised release to a court-appointed trustee, who would remit the money to Belfort's victims. *See* Belfort Judgment, ECF No. 135.

Posner, on behalf of *Inside Edition*, is researching the Belfort case and requests the victims' names and the amount of restitution each victim is owed in order to determine "whether justice has been served in light of claims that some of Belfort's victims may have not

received full restitution while he appears to live a luxurious lifestyle." Posner Reply, ECF No. 183, at 1. I have obtained the list of victims from the government in connection with deciding this motion. It contains more than 1,300 names and many hundreds of addresses.

## DISCUSSION

A. *Applicable Law*

1. *The Right of Access to Judicial Documents*

The public has a common law "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995) (noting that "the common law right of public access to judicial documents is said to predate the Constitution"). The first step in deciding whether a document submitted to a court will be made public pursuant to this common law right is to determine whether or not the item should be considered a "judicial document." *See Amodeo I*, 44 F.3d at 145. If an item is determined to be a judicial document, the next step is to decide the weight of the presumption of access that attaches to that specific item. *See United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1048 (2d Cir. 1995); *United States v. Madoff*, 626 F. Supp. 2d 420, 424 (S.D.N.Y. 2009). Finally, the court must balance any "competing interests" against the presumption of access. *Amodeo II*, 71 F.3d at 1050.

The First Amendment provides the public with a similar qualified right "to attend judicial proceedings and to access certain judicial documents." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). Courts have utilized two "complementary considerations" in determining whether the First Amendment right of access attaches to a certain document. *Press-Enter. Co. v. Super. Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 8 (1986). First,

3

under the "experience and logic" approach, a court must "consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *Hartford Courant Co.*, 380 F.3d at 92). Second, courts have traditionally considered "the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (quoting *Press-Enter. Co.*, 478 U.S. at 93) (alteration in original).

The measure of transparency that these rights of access provide is "pivotal to public perception of the judiciary's legitimacy and independence." *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008); *see also United States v. Madoff*, 626 F. Supp. 2d at 423-24.

2. The Victims' Right to Privacy

The Crime Victim's Rights Act ("CVRA") vests in victims of crimes "[t]he right to be treated with fairness and respect for [their] dignity and privacy." 18 U.S.C. § 3771(a)(1). It is my duty under the statute to ensure that crime victims are afforded these rights. 18 U.S.C. § 3771(b)(1).

B. *Application to Posner's Motion*

The document containing the victims' names and listing the amount of restitution each victim was eligible to receive was submitted to the Court as "Exhibit 1" at sentencing by the trustee appointed to oversee the distribution of restitution payments. I assume the list constitutes a judicial document since it was relevant to the sentence I imposed on Belfort. Accordingly, the presumption of access applies to it.

As for the weight that presumption deserves, "[t]he Second Circuit has explained that [it] will fall 'somewhere on a continuum.'" *Madoff*, 626 F. Supp. 2d at 424 (quoting

4

*Amodeo II*, 71 F.3d at 1049). On one end is the strong presumption of access that attaches to documents or testimony that serve as the basis for adjudication, such as documents that have been submitted by a party in support of a motion for summary judgment that is granted, *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny."), or evidence introduced at trial. *United States v. Salerno (In re CBS, Inc.)*, 828 F.2d 958, 960 (2d Cir. 1987) ("Absent exceptional circumstances, one who testifies at a trial testifies before the public."); *see also Amodeo II*, 71 F.3d at 1049 (same). On the other end of the continuum are documents that "play only a negligible role in the performance of Article III duties," which receive only a slight presumption of access that "amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d at 1050. For documents "in the middle of the continuum," the weight of the presumption of public access "must be determined by the exercise of judgment." *Id.* at 1049-50.

The document at issue here did not play a substantial role "in determining the litigants' substantive rights" and does not implicate "conduct at the heart of Article III." *Id.* at 1049. At most, the information it contained served as one factor of many in the complex endeavor of determining the appropriate sentence for Belfort. The number of victims and the total amount they lost played an important role in my determination of the sentence, but the specific names and addresses of individual victims did not. Accordingly, the presumption of public access for this document does not receive significant weight.

Protecting the victims' privacy in this context presents a strong countervailing interest to the presumption of access to this document. The Second Circuit has instructed that "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing

equation." *Id.* at 1050-51 (quoting *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79-80 (2d Cir. 1990)) (alteration and ellipsis in original); *see also In re Nat. Broad. Co., Inc.*, 653 F.2d 609, 613 (D.C. Cir. 1981) ("The public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests: to protect . . . the privacy and reputation of victims of crimes . . . ."). The importance of protecting the victims' privacy in this matter is further underscored by the right those victims have by virtue of the CVRA "to be treated with fairness and respect for [their] dignity and privacy." 18 U.S.C. § 3771(a)(1). In determining the weight to give such a right of privacy, "courts should first consider the degree to which the subject matter is traditionally considered private rather than public" and also weigh the "nature and degree of the injury" that would be suffered if access is granted. *Amodeo II*, 71 F.3d at 1051.

The victim list requested here does not contain the type of information that is traditionally considered public. As mentioned above, the fact that the defendant and others victimized more than a thousand people is certainly, in my view, a matter of great public interest, as is the total amount of their losses. But the information specifically identifying those victims is traditionally viewed as private information. As for the type of injury that the victims could potentially suffer if their names and addresses are made publicly available, there is embarrassment at being identified as a victim of a boiler-room scam, media contacts that may well be unwelcome, and perhaps worst of all, further victimization by fraudsters; the government tells me that victim lists are sometimes referred to as "sucker" lists, and they "are bought and sold by fraudsters on the theory that someone who has been defrauded previously is an easy target for other scams." Gov. Letter in Opp., ECF No. 181, at 2 & n.1. Although I have no doubt that Posner's application is made in good faith and for a proper purpose, the potential harm

6

that could come from releasing the document to the public is nevertheless substantial. *See Nixon*, 435 U.S. at 598 ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.").

In sum, given the traditionally non-public nature of the specific information sought and the significant potential harm that could befall the already once-defrauded victims, I conclude, on balance, that the interest in protecting the victims' privacy significantly outweighs the relatively low presumption of access to the document.[1]

1. *First Amendment*

Under the "experience and logic" test, I conclude that the First Amendment does not attach to the information sought because there is no historic basis for disclosing this type of document and there is no "logic" in public access to this information playing "a significant positive role" in the process of sentencing. *Lugosch*, 435 F.3d at 120; *see United States v. Gotti*, 322 F. Supp. 2d 230, 250 (E.D.N.Y. 2004) (holding that the First Amendment does not attach to sentencing letters). The specific identification of a defendant's victims in a case involving fraud on the financial markets has no bearing on blameworthiness. Access to that information is thus in no respect a "necessary corollary of the capacity to attend" the sentencing proceeding. *Lugosch*, 435 F.3d at 120; *see also Gotti*, 322 F. Supp. 2d at 250 (sentencing letters are not a "necessary corollary to attending the sentencing proceeding since they have nothing to do with 'the ability of the public and press to attend civil and criminal cases.'" quoting *Hartford Courant Co.*, 371 F.3d at 59).

---

[1] The government argues that as a producer of a daily television news program viewed by millions each day, *see* Posner Reply Letter, ECF No. 183, Posner has the capability to invite victims of Belfort's crimes to voluntarily share with him and *Inside Edition* the information he is seeking. I agree that mitigates the harm to him and *Inside Edition*, but my ruling would be the same even if the applicant here lacked that capacity.

## CONCLUSION

For the reasons stated above, Posner's request for a copy of the names of the victims of Belfort's crimes and the amount of restitution owed to each victim is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 11, 2014
       Brooklyn, New York