UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff,

     v.

JORDAN ROSS BELFORT,

                Defendant,

    and

DELOS LIVING, LLC,

                Garnishee.

------------------------------------x

Criminal Case No. 1:98-cr-00859-AMD

**DEFENDANT'S MEMORANDUM IN RESPONSE TO THE APPLICATION FOR WRIT OF CONTINUING GARNISHMENT**

## INTRODUCTION

Pursuant to the Court's Order dated February 9, 2018, the defendant, Jordan Ross Belfort, submits this memorandum to identify the property interests which qualify for exemption in the above-referenced garnishment proceeding and to provide the legal and factual bases for Mr. Belfort's claim that his earnings under the contracts with Delos Living, LLC ("Delos") fall within the protections of the Consumer Credit Protection Act ("CCPA") and are therefore subject to the limitations on garnishment set forth in the CCPA.

The property interests that qualify for exemption are Mr. Belfort's earnings for the work he performed pursuant to JB Global Holdings LLC's ("JBGH") contracts with Delos.

## FACTUAL BACKGROUND

Since on or about 2010, Mr. Belfort, through JBGH, has been providing services to Delos. Mr. Belfort holds a 50% equity interest in JBGH. On November 5, 2014, Delos entered into a contract with JBGH for Mr. Belfort to perform services for Delos. As compensation for Mr. Belfort's services JBGH was awarded 1.153 Class D Membership Units for "bona fide services" to be performed by Mr. Belfort. The award agreement provides that these units vest in equal amounts over a three-year period every January 1, beginning on January 1, 2016. Under the award agreement a total of 0.86475 units would vest as of January 1, 2018, and an additional 0.28825 units would vest on January 1, 2019, subject to the terms of the Delos award plan.

In addition, on September 9, 2016, JBGH entered into a contract with Delos for Mr. Belfort to provide, through JBGH, referral and other services to Delos. Compensation for the services provided by Mr. Belfort was to be paid directly to JBGH by Delos. Mr. Belfort provided services to Delos from on or about 2010 until December 19, 2017, when Mr. Belfort was served with a termination notice by Delos after the government instituted the instant garnishment proceedings.

Under the terms of the written Referral Agreement between JBGH and Delos, Mr. Belfort, through JBGH, was to be paid "Monthly Fees" and "Referral Fees" "as consideration for the Services" he provided to Delos (collectively the "Fees"). *See* Exhibit A (Referral Agreement) § 3(a)-(d). The Monthly Fees were payable for the first year of the Referral Agreement. Pursuant to the terms of the Referral Agreement, after January 15, 2017, compensation for services performed by Mr. Belfort would be paid in the form of Referral Fees. Under the terms of the Referral Agreement, "Delos, in its sole and absolute discretion, at any

time prior to any payment to . . . [Belfort, through JBGH], may elect to pay all or any portion of the Fees in the form of Membership Units of Delos . . . instead of in cash." *Id.* § 3(k). In addition, there are commissions due and owing to JBGH based on the work performed by Mr. Belfort.

## GARNISHMENT OF MR. BELFORT'S EARNINGS SHOULD BE SUBJECT TO THE LIMITATIONS ON GARNISHMENT UNDER THE CCPA

Under the CCPA, "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed . . . 25 per centum of his disposable earnings for that week." 15 U.S.C § 1673(a). "Disposable earnings" are defined as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." *Id.* § 1672(b). "Earnings," in relevant part, are defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise." *Id.* § 1672(a); *see also* 28 U.S.C. § 3002(6).

The language of the CCPA and relevant case law make clear that "earnings" are not limited to compensation paid on a weekly basis. Rather, the limitations under the CCPA apply to all "compensation paid or payable for personal services, *whether denominated as wages, salary, commission, bonus, or otherwise*." 15 U.S.C. § 1672(a) (emphasis added). In considering the CCPA the Supreme Court stated: "[t]here is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on *periodic* payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (emphasis added). Although wages and salary are frequently paid on a weekly basis, commissions and bonuses are not. *See In Re Mulvihill*, 326 B.R. 459 (Bankr. D. Ariz. 2005) ("It makes little sense

3

to read the statute as only prohibiting garnishment exceeding 25% for a one week period or one pay period . . . Simply because Debtors may be receiving all these unpaid wages in one lump sum does not mean only one week's worth of wages is protected for the statutory amount."); *Cf. In re Roetman*, 405 B.R. 336, 338 (Bankr. D. Ariz. 2009) (interpreting an analogous provision of Arizona law, and concluding that the references to "workweek" do not mean weekly pay only; "[t]here is no ambiguity or absurdity in reading the statute" to treat "an annual bonus, a week's wages, and a commission" equally).

Given the statute's clear language, multiple courts have held that the CCPA applies to both annual and monthly payments, not just weekly payments. *See, e.g.*, *United States v. Lee*, 659 F.3d 619, 622 (7th Cir. 2011) (holding that annual payments from a defined-benefit pension plan qualify as "earnings" under the CCPA); *Sposato v. First Mariner Bank*, 2013 WL 4049718, at *3-4 (D. Md. Aug. 8, 2013) (holding that annual payments from a pension plan qualified as "earnings"); *United States v. Otto*, 2012 WL 2529406, at *3 (W.D.N.C. June 29, 2012) (holding that monthly pension payments are "earnings"); *United States v. Holmes*, 2012 WL 2326003, at *4 (W.D.N.C. June 19, 2012) (same). Mr. Belfort's payments clearly qualify as "earnings."[1]

Given the straightforward definitions provided in the CCPA, it is clear that the compensation Mr. Belfort received from Delos through JBGH—whether paid in cash or units—falls squarely within the meaning of "earnings," and is therefore subject to a 25% garnishment cap. Whether Mr. Belfort receives his compensation as cash or units does not change the fact that it is "earnings" as contemplated under 15 U.S.C. § 1673(a)(1) and 28 U.S.C. § 3002(6).

The Referral Agreement between JBGH and Delos provides that Mr. Belfort, through JBGH, would be paid a "Monthly Fee" until January 15, 2017, and then "Referral Fees" "as

---

[1] Here, the Award Agreement between Delos and JBGH specifies that the payment of units is regular, as the units awarded to JBGH vest on an annual schedule. *See* Exhibit B (Award Agreement).

4

consideration for [his] Services" (collectively the "Fees"). *See* Exhibit A § 3(a)-(d). As is commonplace with compensation packages at emerging companies, some of the compensation is paid in the form of company equity. Delos, under the Referral Agreement, included the option to pay some or all of Mr. Belfort's fees with equity. The Referral Agreement provides that Delos retains the right to "elect to pay all or any portion of the Fees in the form of Membership Units of Delos . . . instead of in cash." *See* Exhibit A § 3(k). Accordingly, the cash and/or units provided to Mr. Belfort through JBGH for the work he performed constitutes "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise." 15 U.S.C § 1672(a).

The Department of Labor ("DOL")—which is the agency charged with enforcing the restrictions on garnishment under the CCPA, *id.* § 1676—has taken the position that stock option plans fall within the definition of compensation under CCPA. DOL has recognized the term "compensation" in the CCPA "includes wages, stock option plans, profit-sharing, commissions, bonuses, golden parachutes, vacation, sick pay, medical benefits, disability, leaves of absence, and expense reimbursement." Dep't of Labor, Field Assistance Bulletin No. 2016-3 (Nov. 30, 2016), https://www.dol.gov/whd/FieldBulletins/fab2016_3.htm (quoting Black's Law Dictionary 342-343 (10th ed. 2014). DOL's inclusion of "stock option plans" in the definition of compensation confirms that Delos's payment of units as consideration for Mr. Belfort's services qualifies as "earnings" under the CCPA.

**CONCLUSION**

For the aforementioned reasons, Mr. Belfort respectfully requests that the Court order that any payments (either units or cash) Mr. Belfort receives from Delos through JBGH for the work he performed for Delos qualify as "earnings" under the CCPA and are thus subject to the 25% garnishment limitations under the CCPA.[2]

Dated: New York, New York
       March 14, 2018

                                          Respectfully submitted,

                                          */s/ Sharon Cohen Levin*
                                          Sharon Cohen Levin

                                          WILMER CUTLER PICKERING
                                             HALE AND DORR LLP

                                          7 World Trade Center
                                          250 Greenwich Street
                                          New York, NY 10007
                                          Tel: (212) 230-8804
                                          Fax: (212) 230-8888
                                          Email: Sharon.Levin@wilmerhale.com

                                          *Attorney for Jordan Ross Belfort*

---

[2] As discussed above, because Mr. Belfort holds a 50% interest in JBGH, the 25% garnishment limitation on Mr. Belfort's earnings would result in a 12.5% garnishment limitation on the total fees paid to JBGH.

6