

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 9, 2018

By ECF
Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States of America v. Jordan Ross Belfort, Defendant*
              *and Simon & Schuster, Inc., Garnishee,*
              Criminal Docket No. CR-98-0859 (AMD) (E.D.N.Y.)

Dear Judge Donnelly:

        In accordance with the Court's order of June 18, 2018, the government writes to provide its position with respect to the garnishment proceedings initiated in the above-referenced case. As set forth more fully below, it is the government's position that JB Global, Inc. is the alter ego, nominee, or instrumentality of the debtor-defendant Jordan Ross Belfort (the "Defendant") and that it should be disregarded for purposes of the government's garnishment of royalties and other proceeds from the sale of the book, "Way of the Wolf," which the garnishee Simon & Shuster, Inc. ("the Garnishee") owes to JB Global, Inc. "for the services of **Jordan Belfort**." See Publishing Agreement, Attached to the Declaration of Sharon Levin, Docket Entry ("DE") 239-1 (hereinafter referred to as the "Publishing Agreement"), at p. 1 (emphasis in original). To that end, the government does not dispute the Defendant's right to utilize the Consumer Credit Protection Act's (the "CCPA") 25% cap on the garnishment of "disposable earnings" for individuals. However, to the extent that the Defendant or his purported JB Global, Inc. business partner, Anne Koppe[1], assert that Ms. Koppe is entitled to any portion of the Publishing Agreement proceeds based on Ms. Koppe's purported ownership interest in the sham company, the government objects.

        By way of background, on or about April 23, 2018, the government applied for a writ of continuing garnishment to be issued to the Garnishee under the Federal Debt Collection Procedures Act (the "FDCPA"). DE 227. In an Answer of the Garnishee, the Garnishee stated that it had the following property in which the Defendant had an interest:

---

[1] Although Ms. Koppe has not filed a formal written objection in the above-referenced garnishment proceedings, the Defendant filed a "Declaration of Anne Koppe" on July 16, 2018, in which Ms. Koppe asserted, in part, that she is the 50% owner of JB Global, Inc. See Exhibit B, attached to the Declaration of Sharon Cohen Levin, DE 239-2, ¶ 1.

"royalties for the Work entitled THE WAY OF THE WOLF," which are paid on a quarterly basis. DE 231, filed on May 7, 2018. The royalties are owed under the Publishing Agreement, by which document the Garnishee contracted "for the services of **Jordan Belfort** (the 'Author')." Publishing Agreement, at p. 1 (emphasis in original).

Pursuant to the Publishing Agreement, the Defendant, referred to as the "Author," is required to complete a book, which "will explain the Author's *Straight Line Selling* program, including the specific steps that need to be taken, examples of the program and related anecdotes of the Author and others." Publishing Agreement, ¶ 4. Further, the Publishing Agreement details other services the Defendant is required to provide, including making himself available for speaking services (Publishing Agreement, ¶ 1(b)), online events (id. at ¶ 1 (c)), photoshoots (id. at ¶ 16(b)) and promotional activities (id. at ¶ 16(g)). The Publishing Agreement contains no reference to Ms. Koppe or to the services she might provide.

On May 25, 2018, the Defendant filed an Objection to the Answer of the Garnishee. See DE 235. In his Objection, the Defendant asserted, "any and all compensation to be paid by Simon & Schuster to JB Global Inc. and owed to Belfort as a result of work performed by Belfort constitutes earnings, i.e. 'compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise.'" Objection, ¶ 7 (quoting 15 U.S.C. § 1672). The Defendant further argued, "Accordingly, … 'garnishment [of those earnings] may not exceed 25 per centum.'" Id. (quoting 15 U.S.C. § 1673). The Defendant's Objection contains no reference to Ms. Koppe or any services she allegedly performed under the Publishing Agreement.

The CCPA, cited in the Defendant's Objection, provides, in relevant part, that "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week … ." 15 U.S.C. § 1673(a) (emphasis added). While the term "individual" is not defined in Subchapter II of the CCPA, "Restrictions on Garnishment," see generally 15 U.S.C. § 1672, the context of its usage in the CCPA indicates that the term refers to a natural person. 15 U.S.C. § 1673(b)(2)(A) ("… where such individual is supporting his spouse or dependent child …, 50 per centum of such individual's disposable earnings for that week …" (emphasis added)). Therefore, the term "individual," as used in the CCPA, refers to natural persons and does not include corporations, such as JB Global, Inc. See Mohamad v. Palestinian Auth., 566 U.S. 449, 451-56 (2012) (when the term "individual" is undefined in a federal statute, the term means a "natural person" unless there is some indication that Congress intended otherwise).

The government's application for a writ of continuing garnishment alleged that "JB Global, Inc. is believed to be the alter ego and/or nominee and/or instrumentality of its two principals," and "[a]ccordingly, it is appropriate to pierce JB Global, Inc.'s corporate veil in order to reach and garnish the Debtor's nonexempt interest in money or property that the Garnishee owes to JB Global, Inc." Id. at p. 2. The purported principals of JB Global, Inc. are the Defendant and Ms. Koppe. This was at least the fourth occasion that the government has alleged that the Defendant's three business entities (JB Global, Inc., JB Global Holdings,

2

LLC, and Global Motivation, Inc.) are the alter egos of their two principals, the Defendant and Ms. Koppe (collectively referred to as the "Principals").[2] The government's position has never seriously been disputed by the Principals and remains undisputed in the above-referenced garnishment proceedings.

The basis for the government's objection is that the Principals should not be permitted to, on the one hand, benefit from the government's contention that JB Global, Inc. should be disregarded as a sham company in order for the Defendant to claim an exemption available to "individuals" under the CCPA, while, on the other hand, implicitly dispute that the corporation is a sham to the extent they argue that the Court should respect the corporate form of JB Global, Inc. and Ms. Koppe's alleged 50% interest in the sham company. The corporation is either legitimate or it is not. If the Court finds that the corporation is legitimate, then the CCPA cap on garnishment of earnings is unavailable to the Defendant and the government is, therefore, entitled to 50 percent of the proceeds from the sale of the book. If the corporation is not legitimate, and the Defendant would like to utilize the CCPA cap on garnishment and carve-out any portion of the proceeds for Ms. Koppe, then they should both be required to demonstrate that they have worked on the book enough to earn tens or hundreds of thousands of dollars from the proceeds of the book as "earnings." See 28 U.S.C. § 3014(b)(2); United States v. Santee Sioux Tribe of Nebraska, 254 F.3d 728, 733 (8th Cir. 2001) (citations omitted)

Because the government contends that JB Global, Inc. is a sham, the government concedes the Defendant's right to utilize the CCPA garnishment cap on "disposable earnings" in the above-referenced garnishment proceeding. The proceeds of the Publishing Agreement are monies owed to the Defendant for personal services rendered and thus meet the CCPA's definition of "earnings." See 15 U.S.C. § 1672.[3] The government objects to any assertion by the Principals that any of the Publishing Agreement proceeds should be paid to Ms. Koppe based solely on her purported ownership interest in a sham company. If Ms. Koppe has performed sufficient work under the Publishing Agreement to warrant earning tens or hundreds of thousands of dollars, we respectfully request that she be directed to provide evidence and testimony demonstrating this fact. Thus far, Ms. Koppe has failed to provide such evidence.

---

[2] See, e.g., Application for Writ of Continuing Garnishment as to Delos Living, LLC, DE 197, at p.2; United States of America v. Jordan Ross Belfort, Defendant, and Global Motivation, Inc., JB Global Holdings, LLC, and JB Global, Inc., Respondents, Miscellaneous Case No. 2:18-mc-00038 (AB)(SK) (Central District of California), Motion to Compel, DE 1, at p. 4-5; United States of America v. Jordan Ross Belfort, Civil Docket No. 3:18-cv-00139 (MMD)(VPC) (District of Nevada), Motion to Compel, DE 1, at p. 6.

[3] This does not include the equity interest in Delos Living, LLC, the dispute over which property interest is currently sub judice by the Court. The government maintains its previously argued position with respect to this particular property interest.

3

On July 5, 2018, Ms. Koppe's counsel provided the attached group of emails, purportedly between Ms. Koppe and employees of the Garnishee, and contended that they were representative of Ms. Koppe's involvement in getting the "Way of the Wolf" published. It is respectfully submitted that the emails demonstrate only that Ms. Koppe acted as an intermediary between the Defendant and the Garnishee on a few occasions as the Defendant worked on the book. Moreover, it is difficult to ascertain the author and recipients of each email, as the emails appear to be cut off or redacted in unusual places. (The redactions marked "USA v. Belfort" were applied by the government to remove reference to the e-mail addresses and other contact information of non-party witnesses. The government will provide un-redacted copies of the emails to the Court.)

Counsel for Ms. Koppe also offered to provide additional emails, as well as "declarations from at least two employees at Simon and Schuster who were dealing with Anne on a regular basis regarding the book." The undersigned requested that he provide the additional emails and declarations, as well as un-redacted copies of emails already provided. Counsel for Ms. Koppe has not provided the offered documentation, despite repeated requests by the undersigned. Counsel for the Defendant also initially agreed to provide the government with documents and information supporting the notion that Ms. Koppe was a "co-author" of the "Way of the Wolf." However, such evidence was never provided by counsel for the Defendant.

In conclusion, the government respectfully requests that Court reject the Principals' argument that JB Global, Inc. is a legitimate corporation and that Ms. Koppe is therefore entitled to 50 percent of royalties payable for personal services rendered by the Defendant. Further, we respectfully request that the Court direct Ms. Koppe to provide documentary evidence in advance of the August 22 garnishment hearing demonstrating that she performed sufficient work to earn any portion of the subject royalties, to the extent that is her position. We also respectfully request that the Court direct Ms. Koppe to appear at the August 22 garnishment hearing and provide testimony subject to cross-examination in support of her contentions.

We thank the Court for its consideration of these issues.

Very truly yours,

RICHARD P. DONOGHUE
United States Attorney

By:      /s/
Peter A. Laserna
Assistant U.S. Attorney
(718) 254-6152

Enclosure

Cc:   Sharon Cohen Levin, Esq. (via ECF)                    Pat Harris, Esq. (via email)
      *Counsel for the Defendant Jordan Ross Belfort*                *Counsel for Anne Koppe*