UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  NOV 3 0 2018  ★

BROOKLYN OFFICE

---------------------------------------------------------------- X

**UNITED STATES of AMERICA,**

- v -

**JORDAN ROSS BELFORT,**

                                   Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

**ORDER**

98 Cr. 859 (AMD)

---------------------------------------------------------------- X

**ANN M. DONNELLY,** District Judge.

The United States seeks a writ of continuing garnishment under the Federal Debt

Collection Procedures Act, 28 U.S.C. § 3205 *et seq.*, of the defendant's interests, through his

company JB Global Holdings, LLC, in Delos Living, LLC. The defendant claims that his

interests in Delos Living qualify for a partial exemption under the Consumer Credit Protection

Act. The government's application is granted, and the defendant's claim of exemption is denied.

**BACKGROUND**

In September of 1998, the defendant was charged with securities fraud and money

laundering in connection with purchases and sales of Dollar Time Group, Inc., and Aquanatural

Company. (*See* ECF No. 1.) The defendant and his co-defendant, Daniel Mark Porush, both of

whom had ownership interests in Dollar Time and Aquanatural, opened a Swiss bank account

and smuggled cash into the account to finance illicit securities transactions. (*Id.* at 5-6, 8-10.)

As part of their scheme, they caused millions of shares of Dollar Time and Aquanatural stock to

be issued at below-market prices to their own offshore entities, which they falsely claimed were

owned by foreign individuals. (*Id.* at 6-7.) They encouraged customers to purchase stock to generate inflated market demand, and sold their stock back into the U.S. marketplace, reaping substantial profits, which they used to buy additional stock in the companies, and then sold shares to their firm to transfer profits from their offshore entities to their firm. (*Id.* at 7-8.)

On May 25, 1999, the defendant pleaded guilty to multiple counts of conspiracy to defraud the United States, money laundering, and manipulative and deceptive devices. (ECF No. 37.) The Honorable John Gleeson sentenced him to 42 months in prison, and ordered him to pay restitution in the amount of $110,362,993.87.[1] (ECF No. 134.) To date, the defendant has paid only a fraction of that amount—$12,843,845.19. (*See* ECF Nos. 197, 242.) At issue here is the extent to which the defendant's interest in an entity called Delos Living is protected from garnishment by the Consumer Credit Protection Act.

In November of 2014, Delos Living entered into an agreement not with the defendant as an individual, but with a company that he set up called JB Global Holdings.[2] Delos Living awarded the defendant's company Class D Membership Units.[3] The agreement was designed to "enhanc[e] [Delos Living]'s ability to attract, retain, and motivate" the defendant, who was

---

[1] The case was reassigned to me on June 7, 2016.
[2] The defendant holds a 50% equity interest in JB Global Holdings; his fiancée owns the other half. (ECF No. 230-2 at 4; *see also* ECF No. 176 at 1.) The defendant also owns, jointly or wholly, Global Motivation, Inc., JB Global, Inc., and Wolf Holdings Limited. (*See* ECF No. 223-2 ¶ 3.) Through these companies, the defendant sells products touting his background on Wall Street and his reputation as "The Wolf of Wall Street," and offers other promotions, including the opportunity to "experience the magic of . . . two full days of masterminding, brainstorming & one-on-one consulting with [the defendant] and . . . an intimate dinner with him at his private residence." *See* Jordan Belfort, http://jordanbelfort.com. He has published three books: *The Wolf of Wall Street*, which was the basis for a motion picture, *Catching the Wolf of Wall Street: More Incredible True Stories of Fortunes, Schemes, Parties, and Prison*, and *Way of the Wolf: Straight Line Selling: Master the Art of Persuasion, Influence, and Success*.
[3] I do not address the referral fees that Delos Living paid to JB Global Holdings under a separate referral agreement because the government does not dispute that the referral fees are "earnings" under 15 U.S.C. § 1672(a) of the CCPA, and "that the maximum amount that may be garnished from the fees is 25 percent." (ECF No. 223 at 7 (citation omitted).)

"expected to make important contributions"; the Class D Membership Units were "intended to be treated as 'profits interests' for federal income tax purposes,"[4] "thereby better aligning the interests of [the defendant] with those of [Delos Living]'s members." (ECF No. 214-2 at 7, 10-11.) The agreement awarded JB Global Holdings 1.153 Class D Membership Units for "bona fide services" that the defendant would provide. (ECF No. 214-2 at 2, 9.) The units were to vest in equal amounts—0.28825 units—over a three-year period at the beginning of each year starting January 1, 2016, and "are non-voting . . . profit interests, intended to serve as incentive equity for certain service providers to" Delos Living. (*Id.* at 2; ECF No. 209 at 2.) The defendant could participate in capital distributions of Delos Living only after the fair market value of the company exceeded $300,000,000. (ECF No. 214-2 at 2, 7.) At the time of the defendant's objection to the government's writ of garnishment, 0.86475 of JB Global Holdings' Class D Membership Units had vested, and 0.28825 unvested units were scheduled to vest on January 1, 2019. (ECF No. 212 at 2.) The fair market value of the company, at least as of the time of oral argument, did not exceed $300,000,000.

Both sides filed memoranda, (*see* ECF Nos. 215, 220, 223, 230), and I heard oral argument on May 16, 2018.[5] (May 16, 2018 Minute Entry.)

### DISCUSSION

The government seeks a writ of garnishment of the defendant's Delos Living membership interests. The defendant responds that the units are "earnings" under the CCPA that qualify for

---

[4] The Internal Revenue Service defines "profits interests" as "a partnership interest other than a capital interest." Rev. Proc. 93-27, 1993-2 C.B. 343 (1993), Section .02. "A capital interest is an interest that would give the holder a share of the proceeds if the partnership's assets were sold at fair market value and then the proceeds were distributed in a complete liquidation of the partnership. This determination generally is made at the time of receipt of the partnership interest." *Id.* at Section .01.
[5] The defendant was not present at the hearing because he was in Lithuania in connection with one of his business ventures.

3

the 25% garnishment cap. I conclude that those membership interests do not qualify as "earnings" under the CCPA, and are therefore subject to full garnishment.

Under the Federal Debt Collection Procedures Act, "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a). The FDCPA defines "property" as "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts)) . . . ." *Id.* § 3002(12). "Nonexempt disposable earnings" are "25 percent of disposable earnings, subject to . . . the Consumer Credit Protection Act," *id.* § 3002(9), which provides:

> Except as provided in subsection (b) and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
> (1) 25 per centum of his disposable earnings for that week, or
> (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less.

15 U.S.C. § 1673(a). "Earnings" are "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." *Id.* § 1672(a). "Disposable earnings" are "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." *Id.* § 1672(b).

The plain language of the CCPA does not address the extent, if any, to which the garnishment cap applies to property like the shares at issue here. Nevertheless, a review of the statute's purpose and the relevant case law leads me to conclude that these interests are not what

4

Congress had in mind when it enacted the CCPA. *See Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (Congress intended to protect "periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis.").

Congress adopted the garnishment limitation in the CCPA to "relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families." *Kokoszka*, 417 U.S. at 650-51 (internal quotation marks omitted) (quoting H.R. Rep. No. 1040, 90th Cong., 1st Sess., 21 (1967)). Nothing about the defendant's arrangement with Delos Living is consistent with that goal.

The award agreement does not permit the defendant to participate in capital distributions unless and until Delos Living's fair market value exceeds a $300,000,000 hurdle. In other words, the defendant receives no cash from the membership interests until Delos Living's fair market value is greater than $300,000,000, which, as far as I am aware, has not occurred. The defendant does not claim, nor could he in light of his financial records and the conditions governing the membership units, that he uses the membership units to support himself and his family at all, let alone on a periodic basis. According to the record, the defendant has relied on another of his companies—again owned solely by him and his fiancée—to pay for millions of dollars of personal expenses.[6] (ECF No. 223-2 ¶ 9 ("Belfort and Ms. Koppe had the company pay for their personal expenses in 2013, 2014 and 2015, net of any reimbursements or reversals, in the amounts of $1,422,632.42, $2,792,004.21 and $3,722,580.89, respectively.").)

The Court has not found and the defendant does not cite any case in which a court applied the CCPA's garnishment cap to a similar type of property interest. Courts have,

---

[6] The defendant has also paid hundreds of thousands of dollars to his children through one of his companies, even though they did "nothing" for the company. (*See* ECF No. 223-2 ¶ 12.)

5

however, concluded that the CCPA exemption does not apply to interests that more closely resemble earnings than the property at issue here. These interests include tax refunds, rollover IRA funds, accounts receivable for work performed, and severance pay received in a lump sum. *See Kokoszka*, 417 U.S. 692 (tax refunds are not "earnings" under the CCPA); *United States v. Blondeau*, 2011 WL 6000499 (E.D.N.C. Nov. 1, 2011) (a TD Ameritrade Rollover IRA is not "earnings" under the CCPA); *cf. In re Lawrence*, 219 B.R. 786 (Bankr. E.D. Tenn. Mar. 18, 1998) (accounts receivable for work performed are not "disposable earnings"); *Pallante v. Int'l Venture Investments, Ltd.*, 622 F. Supp. 667 (N.D. Ohio 1985) (severance pay received in lump sum form is not "earnings").

Citing a Department of Labor Field Assistance Bulletin, the defendant asserts that the Department of Labor has concluded that stock option plans, like the defendant's agreement with Delos Living, qualify as "earnings" under the CCPA. (ECF No. 215 at 5 (citing Dep't of Labor, Field Assistance Bulletin No. 2016-3 (Nov. 30, 2016).) I do not agree with that interpretation. The Field Assistance Bulletin, which is not binding authority, was meant to provide "guidance to Wage and Hour Division (WHD) field staff regarding the treatment of disability payments from an employment-based disability plan as earnings under the Consumer Credit Protection Act." Dep't of Labor, Field Assistance Bulletin No. 2016-3 (Nov. 30, 2016). The bulletin—which quotes a Black's Law Dictionary definition of compensation—says nothing about the CCPA's application to interests like the Delos Living agreement.

Nor am I persuaded that a passage in the government's brief in *France v. United States*, 136 S. Ct. 583 (2015)—in which the government quotes the same Black's Law Dictionary definition of compensation—amounts to a concession that the defendant's interest in Delos Living should be protected from complete garnishment. *See* Brief for the United States at 11,

6

*France v. United States*, 136 S. Ct. 583 (2015). The issue in *France* was whether the garnishment cap applied to monthly payments under a disability insurance policy obtained through an employer, and the government said nothing about the CCPA's application to arrangements like the defendant's.

Not only would capping the Delos Living membership units be inconsistent with the purpose of the CCPA—to enable the wage earner to support himself and his family on a periodic basis—but applying the cap to this kind of interest under the circumstances would frustrate "the primary and overarching goal" of the Mandatory Victims Restitution Act, "which is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000); *see also Dolan v. United States*, 560 U.S. 605, 612 (2010) (The MVRA "seeks primarily to ensure that victims of a crime receive full restitution."). The MVRA "made victim restitution a mandatory component of the sentence for many federal crimes and provided for enhanced post-conviction enforcement of such orders by the federal government." *Ceparano v. Wells Fargo & Co.*, No. 10-CV-0728, 2012 WL 2367126, at *3 (E.D.N.Y. June 19, 2012) (citing 18 U.S.C. §§ 3663A, 3664). Under the MVRA, a restitution judgment "may be enforced against all property or rights to property of [the defendant]." 18 U.S.C. § 3613(a). Permitting the defendant to shelter his business interests behind the CCPA's garnishment cap would frustrate the goals of the MVRA.

## CONCLUSION

The government's application for a writ of continuing garnishment of the defendant's membership interests in Delos Living, LLC, is granted, and the defendant's claim of exemption is denied.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
      November 30, 2018

8